A free infant of color, rightfully bound as an apprentice, remains subject to the jurisdiction of the County Court, wherein he was bound, until discharged in the mode provided, sec. 5, ch. 5, Revised Code.
 

 A habeas COkpus was returned before bis Honor, Chief Justice PeaesoN, who invited the other Judges to assist at the argument.of the matter, and accordingly the case was heard in the room of the Supreme Court, by all the Judges, on 8th of January, 1859, and was as follows :
 

 The matter was argued by Badger, with whom was
 
 Ed
 
 
 *266
 
 wards, for the petitioner, and
 
 B. F. Moore
 
 and Miller, for the defendant. Upon the argument of the case, the Judges unanimously agreed, that the petitioner had been lawfully bound to the defendant by the County Court of Franklin. At the request of the Chief Justice, Judge Ruffin drew up an opinion, which was concurred in by Judge Battle, which is contained in the following letter addressed to the Chief Justice :
 

 “ Agreeably to your request, I have considered the case of habeas corpus, which was before you on Saturday, and my conclusion is, that the applicant cannot be discharged.
 

 The gentlemen of the bar put the case, I think, on its true point, namely, ■whether the County Court of Franklin had jurisdiction, so as to render the binding to the present master valid, and I am of opinion that Court had jurisdiction. It is unnecessary to embarrass oneself, in considering this question, by adverting to the law of settlement as to infants generally, or even as to those of color generally ; because, as I conceive, the statutes have created a clear rule in respect to such an infant of color as this applicant, namely, one who was once rightfully bound by the court of a particular county. It is admitted that the original residence and settlement of this boy was in Franklin, and at the time he was first bound. That seems to me to fix the apprentice of color to that county, during his minority, except in the special case provided for, of a removal of the master and apprentice to another county by the consent of Franklin Court, and the assent thereto by the wardens and court of the new county, evidenced by a new binding in the latter county, to the same master. The act requires the person, to whom a free negro is bound, to give bond not to remove the apprentice out of the county, and for the production of him at the expiration of the term, and whenever the court may require in the meanwhile ; with a proviso for a surrender to the court by the master and acceptance by the court, and the further proviso, just mentioned of a removal to another county. If the bond were one voluntarily given by the master, it might be argued that a-removal of the apprentice would give an action on the bond
 
 *267
 
 as the only remedy. But this bond is prescribed by the Legislature upon a principle of policy, and the provision of the statute, which requires it, is to he construed as establishing that policy and a rule of law to enforce it, just as much as if the statute declared and enacted them expressly. To what end, then, is the apprentice to be produced, when required by the court which bound him, but that he is to be subject to the control and disposition of that court. If so, then the master may not only be sued, for not producing him, when ordered, but the court may assert its control and power of disposition over the apprentice, in any way, necessary to render it effectual, by bringing in his body, whether found in that county or any other. That is not only a power of the binding court, but it is a duty which the wardens and court of a county, to which the master has removed, (which can only be a county adjoining the first,) may enforce on the first county by a refusal to bind anew, and a removal of the apprentice to his former settlement, according to the 13th section of 86 ch. Devised Code. Such a construction of the acts is the more required, since it is plain that the enactments proceed upon two ideas affecting public policy — the one, the peculiar exposure of this part of our population to oppression and wrong, in being carried to remote parts and made the subject of traffic, and the other, that they may be subjected, while amongst us, to the supervision of a strict police, so as to restrain their propensity to be idle and mischievous ; and that can only be effected by permanently vesting the 'whole control of the free infant of color in the court which first legally takes charge of him. The power is, therefore, given for the twofold purpose of protection to the child of color from much wrong— even, possibly, of being enslaved in remote places, and in the wholesome exercise of a local police; and the jurisdiction.once attached, it cannot be ousted by the unlawful act of the master or apprentice.
 

 “I do not consider it material to enquire, whether the boy might properly.be bound a second time, before cancelling the first indentures after notice to the first master. It would seem, indeed, after so long an abandonment of an apprentice by a master, who had removed from the State, the court must, of
 
 *268
 
 necessity, reassu'me the charge and care of the infant. ‘ But, at all events, that is a question between the two masters, and cannot found a reason why the boy should not be the apprentice of either, so as to entitle him to the absolute discharge, which is claimed for him.
 

 “ He ought, I think, to be remanded to the custody of the defendant.”
 

 I concur in the above opinion.
 

 ¥m. H. Battle. ;
 

 I concur in the conclusion of Judge Ruffin, for the reasons set out in the opinion, which lie was kind enough to draw up at my request. It is considered by me, that the petitioner be remanded and put in possession of Herbert II. Ilight, and that the said Ilight recover of Jesse Person, the next friend of the petitioner, his costs to be taxed by the clerk of the Supreme Court, at Raleigh. Let execution issue therefor.
 

 The Chief Justice having died since the last term of the Court, the following proceedings were had :
 

 On the opening of the Court, the Attorney General rose and said:
 

 May it please your Honors:
 

 I beg leave to announce to the Court that a meeting of the members of the Bar, in attendance on the Supreme Court, was ■held this morning in the Court’ room, for the purpose of giving expression to the sense of the loss which the country has sustained, by the death of the late lamented and venerable 'Chief -Justice Nash.
 

 
 *269
 
 In obedience to- the wishes of the meeting, it becomes my duty to present to the Court, the preamble and resolutions which were- unanimously adopted. In presenting these resolutions, I shall not enter into any extended observations in regard to the character of the deceased, either public or private. He needs no eulogy. For nearly forty years he has been in the public service, and in whatever position he- has been placed, he has performed the duties devolving upon him, with credit to himself and satisfaction to- the public. A man of unsullied private character, he possessed in an eminent degree, those rare and intestimable qualities- both of mind and heart, whieh must command the respect and esteem of all good men,. "Whilst we feel a deep and sincere-sorrow, at being separated from- such a man, yet we- are-, t® some extent, consoled by the reflection, that he has left behind him an example, that will be a beacon light, a polar star to- guide succeeding generations in the paths- of duty and virtue. Believing, as I do, that each member of the Court will heartily concur in the sentiments expressed in- the-following resolutions, I beg leave to read them- to the Court..
 

 The Attorney General then presented and read the following :
 

 At a meeting of the Bar and officers of the Supreme Court of North Carolina, held at the Court room, in the Capitol, on Monday the M day of January,. 1859..
 

 On motion, the chairman appointed P. IT. Winston, sen., W. N. II. Smith, B. S. Donnell, John Pool, John H. Bryan, William A. Jenkins and Hamilton C., Jones, a committee to consider and report resolutions expressive of the feelings of this meeting on the death of the late Chief Justice Nash.
 

 Mr. Winston, from the committee, reported the following preamble and resolutions:
 

 Frederick Nash, late Chief Justice of the Supreme Court of North Carolina, having died since the last term, the members •of the bar, and officers of the Court, desire to express their sense of the loss which the country has sustained, in the-death
 
 *270
 
 of a magistrate so worthy of the high office, whose duties lie performed with perfect integrity, and eminent usefulness and dignity ; and also to give some outward evidence of sincere sorrow for their separation from a man, whose ardent, yet cheerful piety, at once gave strength and consistency to all his private virtues, and to his manners a pervading and attractive gentleness ; which, joined to the more imposing qualities exhibited by him in his public employments, gained for him universal affection, esteem and admiration ; therefore resolved,
 

 1. That the members of this meeting will wear the usual badge of mourning during the present term of the Court.
 

 2. That a copy of these resolutions be sent to the family of the decased by the chairman of this meeting.
 

 3. That the Attorney General be desired to present the proceedings of this meeting to the Judges of the Supreme Court, with a request that they be entered on the records of the Court.
 

 The preamble and resolutions were seconded by Mr. Badger in a feeling and eloquent address, and after a few impressive remarks from the chairman, were unanimously adopted.
 

 The meeting then adjourned.
 

 'Whereupon, Chief Justice Pearson, on behalf of the Court, replied:
 

 The members of the Court are deeply impressed by the sad event to which your proceedings refer, and join in the sentiments to which you have given expression.
 

 The Court directs the proceedings of the Bar to he entered on the minutes.
 

 Court adjourned until to-morrow morning, 10 o'clock.