The petitioner alleges he has put in a substitute for the war and is not liable to conscription, but was arrested and detained as a conscript by the enrolling officer, and prays for a special writ to the sheriff to take his body and have it on the return, and to summon the enrolling officer to show the cause of his arrest and detention, under the act of the Legislature, 1862, ch. 46, on the averment that adequate relief may not be afforded by directing the writ to the enrolling officer, for he believes the officer will not return his body.
If the act of Congress suspending the privilege of the writ of habeascorpus embraces the case, and if Congress has power to suspend the writ in such cases, the petitioner is not entitled to the special writ, as it would be doing indirectly what cannot be done directly; otherwise he is, for unless the body be returned, adequate relief cannot be given; (526) so that is the question; and as it is new, I directed notice of the application to be given to the enrolling officer and requested an argument.
It was insisted by Mr. Furches, on the part of the petitioner, that the act of Congress only applies to the case of persons lawfully arrested and afterwards detained as prisoners by a special order of the President or Secretary of War. The effect being simply to deprive persons detained as prisoner, under such circumstances, of the privilege of the writ whereby to be discharged, if a probable cause is not shown, or admitted to bail if the offense be a bailable one, and to enable the President or Secretary of War to have them detained as prisoners without further *Page 340 
inquiry on the part of the Judiciary until the case is tried; and that the suspension does not have the effect of enabling the President or Secretary of War to cause citizens to be arrested illegally, as by general order, or by military officers, or to delay the trial. In support of this position he relied on this clause of the Constitution: "The right of the people to be secure in their persons, etc., against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized," as qualifying and restricting the power to suspend the privilege of the writ of habeas cropus; so that Congress has not the power to authorize the President or Secretary of War to issue a general order to military or other officers to arrest and detain, as prisoners, any persons who may be charged or be suspected, by these subordinate ministerialofficers, to be guilty of any of the offenses specified, or even a special order for the arrest of any particular individual, but that the arrest must be made under a warrant issued by a judicial officer upon probable (527) cause, supported by oath and particularly describing the person to be seized; that otherwise this and other principles of liberty, solemnly announced in the Constitution for the purpose of restricting the power of Congress, may be annulled and made of no effect, the Judiciary ignored as a coordinate branch of our Government, and the Executive invested with absolute power to imprison any citizen at discretion. In other words, the President would be a dictator; that the act would not have been passed for any such purpose, and if it was, it is unconstitutional and void.
There was no argument on the side of the enrolling officer. I infer (see General Order 31, 10 March) the Secretary of War insists that the effect of the suspension is to empower the President or the Secretary of War, by general or special orders, to authorize the arrest and detention, as a prisoner, of any person for any of the causes specified, and to suspend all inquiry by the Judiciary in regard to the legality of the arrest or the cause of it.
There is certainly a wide difference of opinion as to the effect of the suspension, and one not easy of solution. It would be a matter of regret if the bill passed under a misapprehension in regard to the effect of a suspension of the privilege of the writ. But it is not necessary for the purpose of this case that I should form or express an opinion on that question; for it will be conceded that whether a case is embraced by the act, or not, is a question of law for the courts, and I have a clear conviction that the clause authorizing the suspension of the privilege of the writ does not apply to the case before me, which is an application for a *Page 341 
civil remedy to assert a private right under a contract, the party not being charged with the commission of, or an intention to commit, any crime.
There are several kinds of writs of habeas corpus. Bacon Abr., (528) title Habeas Corpus. (1) Habeas corpus ad subjiciendum, which is the main writ, called the "writ of right," "the bulwark of liberty," and by way of preeminence, "the writ of habeas corpus," which a person who stands committed or detained as a prisoner for any crime may obtain from a court of common law, or a single judge in vacation time by 31 Charles II., ch. 2 (Rev. Code, ch. 55, sec. 1), on which the matter will be inquired of and the prisoner discharged, bailed, or remanded. (2) A writ of habeascorpus for a civil cause, when the right to the custody or services of a person is contested, and he is imprisoned or otherwise restrained of his liberty for any other cause than the commission of the criminal offense. At common law in such cases a writ homine replegiando may be sued out. That is an original writ, and under it the body is replevied subject to the decision of the Court. Fitz Herbert N. B., 68, E.; Comyn Dig., Pleader, 3 K., 1; Imprisonment L., 4. "So a man unlawfully detained in custody may have homine replegiando, si non captus sit preceptum regis (that is, if not imprisoned for crime). 2 Inst., 55. This is a civil suit to determine the right to the custody. Homine replegiando lies for a negro or an Indian brought into England (3 Mod., 120); or if one takes a wife, or a child, or apprentice of another.
This original writ is now out of use, being superseded by a judicial writ issued by a court in all cases where homine replegiando lay to have the body returned, the right to the custody determined, and the person discharged or remanded. By statute 56, Geo. III., ch. 100 (1816), Rev. Code, ch. 55, sec. 10, this jurisdiction is extended to a single judge in vacation time, when any person shall be imprisoned or otherwise restrained of his liberty for any other cause than the commission of a criminal offense. Musgrove v. Kornegay, 52 N.C. 71, is an instance of a suit under this statute; it was a contest in respect to minor children instituted by a writ of habeas corpus, and brought to the Supreme Court by appeal. Prue v. Hight, 51 N.C. 265, is another instance; it was a contest as to an apprentice, decided on habeas (529)corpus before a single judge on a writ sued out by the alleged apprentice. 3 Keb., 5, 26, sec. 2; Lev., 128; 1 Strange, 444. A young lady brought before a judge on habeas corpus by one who claimed her as his wife. Many other cases might be referred to, in all of which the proceeding is treated as a civil suit to determine the right to the custody or services of a person. (3) A writ of habeas corpus ad testificandum to bring up a prisoner to give evidence before a court. (4) A writ of *Page 342 habeas corpus ad respondendum. (5) A writ of habeas corpus ad faciendum etrecipiendum. (6) A writ of habeas corpus ad deliberandum et recipiendum.
It seems to me perfectly clear that the clause of the Constitution giving power to Congress to suspend the writ of habeas corpus refers to the writ of habeas corpus ad subjiciendum, when a person stands committed or detained as a prisoner for a crime within 31 Charles II., ch. 2; Rev. Code, ch. 55, sec. 1, and does not include the other writs.
Our Constitution, with a few alterations, is taken from that of the United States, which rests on the Constitution of England as its substratum, with some modifications, conferring certain powers on the legislative branch of the Government which in England are vested in the Crown. The clause in the Constitution of the United States and of the Confederate States is in these words: "The privilege of the writ ofhabeas corpus shall not be suspended unless in case of rebellion or invasion, when the public safety may require it." These words do not confer the power affirmatively, but by what is called a negative pregnant. An explanation of this is to be found in the history of the times. In England it was a vexed question whether Parliament could suspend the privilege of the writ of habeas corpus unless in cases of rebellion or invasion. There are some precedents for suspending it when there is no rebellion or invasion, but the authority of these precedents is questioned. In 1777 Lord North brought in a bill to suspend the writ of (530) habeas corpus in cases of treason or sedition committed in any of the colonies. The bill was violently opposed. There was no rebellion or invasion in Great Britain, and it was denounced as unconstitutional and dangerous to liberty. Lord North had to yield and allow it to be amended by inserting a proviso: "Nothing in this act shall be construed to extend to persons resident in Great Britain." This concession gave extreme offense to the leaders of the high prerogative party, who had zealously supported the bill in its original state. Miller, Cont. Hume, and Smollett, 187-'8. In framing the Constitution of the United States the purpose was to settle this vexed question and to limit the power expressly to times of rebellion or invasion. So the occasions on which the privilege of the writ may be suspended are fixed by the Constitution in so many words. In respect to the cases and the writs to which the suspension might be made to apply, no question had ever been raised. It was conceded by all persons of all parties, and at all times, that the suspension could only include cases of persons who stand committed or detained as prisoners for some criminal or supposed criminal offense, treason, sedition, and the like, and the writ applicable to such cases. No precedent can be found among the rolls of Parliament where the suspension has ever been made to extend to civil cases or the writs *Page 343 
used in such cases, or to any of the other kinds of the writ save that which is styled "the writ of habeas corpus," applicable to the case of persons committed for crime and within the provision 31 Charles II., ch. 2; Rev. Code, ch. 55, sec. 1. Hence the words "when the public safety may require it" were deemed sufficiently explicit in respect to the cases and the kind of writ to which the suspension would apply. What reason can be conceived for extending the suspension to the writ of habeas corpus ad testificandum or the other inferior writs, or (531) to that kind which is used as a civil remedy, and is a civil suit substituted in place of the action homine replegiando, as in Musgrove v.Kornegay and Prue v. Hight, supra, and the case of the lady claimed as a wife, and others of a like nature with which the public are not directly concerned?
One would as soon expect to find in the Constitution power conferred on Congress to suspend the right to a writ in case for money had and received, against tax collectors for an excess exacted under a wrong construction of the tax bill, and paid under protest; or the right to a writ in trespass, for false imprisonment, against military officers for illegally arresting men as conscripts, with which cases the public interest may indirectly be made to connect itself, as bearing on the amount of taxes collected, or the number of men put into the service. Suppose, by reason of the difficulty put in the way of this kind of writ of habeas corpus, the old action,homine replegiando, should be resorted to. Will any one venture to say the suspension would apply to that action? It is worthy of remark that the special writ to the sheriff, and summons to the party detaining, prayed for in this petition and authorized by the statute, 1862, are very similar to the process used in that action when brought by the party restrained of his liberty.
On so grave a subject every word must be supposed to have some import; and every word used in this clause does import that the power of suspension has reference only to the writ applicable to the case of persons imprisoned for crime. "The privilege." When one is committed to await his trial for a crime, it is a privilege to be allowed a writ whereby the legality of his arrest may be inquired of, and he may be discharged or admitted to bail. But when one who has not committed and is not supposed to have committed a criminal offense is wrongfully restrained of his liberty, that he should be allowed to institute a civil suit to be relieved from the confinement is a right which every State is bound to secure at all times to its citizens; and these words must import that the power of suspension refers only to the former (532) class of cases, otherwise no meaning can be attached to them."The writ of habeas corpus," using the definite article instead of "a
writ." Why? — to designate that kind which, by way of preeminence, is *Page 344 
called "the writ of habeas corpus." "Shall not be suspended. The other kinds of the writ never had been suspended or their suspension thought of, so this negative points to that kind which had been before suspended, and in regard to which the public mind had been so frequently and so violently agitated. "Unless in cases of rebellion or invasion, when the public safety may require it." There is nothing in the purpose for which the other kinds of the writ are used that has the slightest reference to times of rebellion or invasion, or to the public safety; but in times of internal commotion it might affect the public safety if persons who had committed, or were suspected of the intention to commit, treason, sedition, or other like offenses should be allowed to go at large; so these words also point to the suspension of that kind of the writ which might be used to obtain a discharge, and put it in the power of such malefactors to carry out their treasonable and seditious practices.
The remaining question is, Does the case made by this petition present matters for a writ of habeas corpus under the first section of the statute, "if any person shall stand committed, etc., for a crime, he may, in the vacation time, complain to a judge, who, on view of a copy of the warrant of commitment, or otherwise on oath that it is denied, shall grant a writ of habeas corpus" or does it present matter for a writ ofhabeas corpus as a civil remedy to assert a private right under section 10, when any person shall be arrested or otherwise restrained of his liberty "for any other cause than the commission of a criminal offense, he shall be entitled, upon its appearing by affidavit that there is reasonable ground for the complaint, to a writ of habeas corpus"?
(533) The case clearly falls under section 10. The petitioner does not show that he was committed for a crime, but that he is restrained of his liberty as a conscript. He avers he is not liable to conscription, and asks for the writ as a civil remedy to establish his right under a contract. I am to take it, until otherwise decided by the Supreme Court, that the act of Congress conscripting principals of substitutes is unconstitutional, according to the decision in Walton's case, ante, 310;* so there appears to be reasonable ground for the complaint.
Will it be said Congress has power to pass an act, and then make it a crime to apply for a civil remedy to test its constitutionality, and to suspend the privilege of habeas corpus, so as to exclude the question from the courts? (!!) I shall leave the proposition stated nakedly, to be looked at in silence, as the best mode of exposing its error.
The petitioner avers that he has been arrested and detained as a conscript, and make a case for a writ under section 10, to which the power *Page 345 
of suspension does not apply. Can the tables be turned so as to put him in the condition of one committed or detained as a prisoner for a crime, and make it a case for a writ under section 1, to which alone the power of suspension does apply? This application for a writ is a consequence, and not the cause of the arrest and detention complained of; and to detain the man as a prisoner for making the application, and substitute a certificate of that fact for a return to the writ, inverts the order of things. If he is detained as a prisoner, he becomes an encumbrance, and the purpose of using him as a conscript is defeated (534) unless there can be another magical change by which he will no longer be considered to be detained as a prisoner, but to be held as a conscript. The proposition requires no comment.
The party is, in my opinion, entitled to a special writ.
22 May, 1864.
NOTE. — Vide In re Roseman, ante, 368; contra, In re Long, next case; In re Rafter, post, 537.
Cited: In re Cain, ante, 312; In re Russell, ante, 391.
* NOTE. — The decision in Walton's case was reversed at June Term, 1864. ante, 325, subsequently to the filing of this opinion.