STATE v. JAMES M. BURTON.

*Bastardy—Imprisonment—House of Correction—Insolvent Debtor.*

Where the defendant in a bastardy proceeding was placed in custody of the Sheriff until fine, allowance and costs were paid, and was committed to jail by the Sheriff under this order, and remained there for twenty days, and was then discharged under sections 2967 and 2972 of *The Code*, and at a subsequent term was sentenced to the house of correction under section 38 of *The Code: Held*, (1) that placing the defendant in custody of the Sheriff was, by necessary implication, an order to imprison upon failure to pay fine, allowance and costs; (2) that defendant was properly discharged; and (3) that the sentence to the house of correction was erroneous, without regard to the fact whether there was or was not such a house in the county.

(*Arguendo* by AVERY, J., that the imposition of a fine constitutes bastardy also a criminal action—from which CLARK, J., differs, contending that bastardy is solely a civil action.)

The defendant James Burton was tried, on appeal from a Justice's judgment, at the February Term, 1893, of the Superior Court of VANCE County, before *Shuford, J.,* and a jury, on a proceeding in bastardy, and the issue was found against him, and, upon judgment being pronounced against him by his Honor, he was, on motion of the Solicitor, placed in the custody of the Sheriff, by whom he was, on failure to comply with the order of the Court aforesaid, committed to the common jail of Vance County, whence he was regularly discharged, by order of the Clerk, March 13, 1893, under the provisions of *The Code*, §§ 2967, 2972.

At the next term of the said Superior Court (May Term, 1893), the Solicitor for the State refusing to move in the matter, W. B. Shaw, Esq., who appeared on the trial of the proceeding at February Term, 1893, with the Solicitor, at the instance of the prosecutrix, on the affidavit set out in the

record, moved the Court for a *copias* against the defendant, which motion was allowed. The defendant being brought into Court, the said W. B. Shaw, assuming to act for the State, moved the Court that he be imprisoned under section 38 of *The Code.*

The defendant, by his counsel, insisted that, the Solicitor having refused to act in the matter, the Court could not, on motion of another than the Solicitor, make any order for his imprisonment under said section 38. Thereupon, his Honor Judge Shuford stated that he would act on the matter of his own motion.

The defendant then insisted that, having been committed to prison at the February Term, 1893, in default of payment and compliance with the order and judgment of the Court then rendered, he is not subject to be committed to prison in default of paying the same; that it is not competent for the Court, of its own motion, or on the motion of another than the Solicitor, and without the motion of the Solicitor prosecuting on behalf of the State, to arrest or punish this defendant; that, having been once imprisoned and discharged according to law, he cannot now be resentenced or reimprisoned for the same offence; that, there being no house of correction in the county of Vance, the said section 38 is inoperative; that section 38 of *The Code* applies only before the commitment of defendant in default of complying with the judgment of the Court, and not after his discharge from imprisonment under section 2967; and moved for his discharge.

His Honor was of opinion against the defendant on all these questions, and held that the record of the Court at February Term, 1893, showing no order for the commitment of the defendant for failing to comply with said judgment, he is subject to be imprisoned under section 38 of *The Code,* and pronounced the judgment accordingly, sentencing him to imprisonment for six months in the county jail, with leave

nty Commissioners to hire him out for reasonable ages.

The defendant excepted to the rulings and judgment of his Honor, and appealed.

*The Attorney General* and *Pittman & Shaw*, for the State. *Mr. T. T. Hicks*, for defendant (appellant).

AVERY, J.: Upon conviction at the February Term, the Court had power to "sentence" the defendant either to prison, or if the county authorities had established a house of correction, to hard labor therein, in addition to the judgment pronounced against him, which imposed the payment of the usual fine and allowance. This conclusion is inevitable if we construe the two sections (*The Code*, §§ 35 and 38) relating to the judgment in bastardy cases together, and give effect to both, as a familiar rule of construction requires us to do. Instead of imposing the additional judgment of imprisonment in the county jail, however, the Judge, on motion of the Solicitor, ordered the Sheriff to take the defendant into his custody for failure to comply with the first order, and so left him at the end of the term. During that term the sentence could have been modified, as its execution had not begun. 21 Am. & Eng. Enc., 1084. But no further steps were taken till the term held in May following.

If there had been a house of correction in Vance County, the defendant would nevertheless have been entitled to his discharge upon filing his petition and taking the insolvent debtor's oath, if he had been ordered into custody till fine and cost should be paid. *The Code*, §§ 2968 to 2974; *State* v. *Williams*, 97 N. C., 414; *State* v. *McNeely*, 92 N. C., 829. But in our case the defendant, at the instance of the Solicitor, "was placed in custody of the Sheriff, by whom he was, on failure to comply with the order of the Court, committed to the common jail of Vance County, whence he was regularly

discharged by order of the Clerk, on March 13, 1893, under the provisions of *The Code*, §§ 2967–2972."

We think that the order to the Sheriff to take the defendant into his custody was, by necessary implication, an order to imprison upon failure to pay the fine and costs. The Court was presumed to act within the purview of its power, and had no authority to place the defendant in custody, except for the purpose of compelling such payment. The Sheriff so construed the order, and we do not think that in acting upon it he exceeded his authority or made himself amenable for damages for false imprisonment. An order that a defendant be placed in custody of the Sheriff is construed, according to the practice prevailing in all the Courts, as a commitment till fine and costs are paid, or, with the sanction of the Court, secured. When such is the order, the prisoner may be lawfully discharged either upon the payment of fine and costs, or upon taking the prescribed oath. *State* v. *Williams* and *State* v. *McNeely, supra.* When it is admitted, as in this case, that a verbal order was given to the Sheriff to take the defendant into custody, after it had been adjudged that he pay fine and costs, and that the Sheriff took and held him till, upon petition, he was discharged in accordance with the provisions of the statute (*The Code*, §§ 2967 to 2972), unquestionably it was the right of the prisoner to demand that a record of the order placing him in custody be entered upon the minutes. *State* v. *Harrison*, 104 N. C., 728; *State* v. *Farrar*, 104 N. C., 702. The persons entitled to be so released are specifically mentioned, among them is "every putative father of a bastard committed for a failure to give bond or to pay any sum of money ordered to be paid for its maintenance." Section 2767 (1). If there is room to doubt whether the language quoted includes the fine as well as the allowance for the maintenance of the child, the omission in the first is supplied by the provision of the second subsection, which extends the right of discharge to those committed for the

"fine and costs of any criminal proceeding." We must concede that a comparison of the cases cited by counsel does not lead to a very clear understanding of what was meant when a bastardy proceeding was declared a civil action, but partaking somewhat of the nature of a criminal action. It is, however, manifest that the defendant may be committed to prison in default in paying the fine, as well as the allowance, since the statute (*The Code*, §§ 35 and 38) plainly so provides; and it has been expressly held that the judgment for a fine and costs imposed by a Court is not deemed a debt within the meaning of Art. I, § 16 of the Constitution. *State* v. *Cannady*, 78 N. C., 539. In that case the conclusion of the Court rested upon the position that the Constitution did not prohibit the enactment of a law subjecting a prosecutor to imprisonment on failure to pay a judgment for costs. We think that upon the same principle the Legislature had the power, by express provisions of the statute, to make it the duty of the Court to commit the putative father of a bastard on default in satisfying a judgment for fine, allowance, and costs. Speaking for myself only, however, I must say that I think the Act of 1879, by imposing a fine, made the putative father indictable for a criminal misdemeanor, and also liable to imprisonment for non-payment of the allowance.

The manifest intention of the Legislature, as evinced in the enactment of sections 35 and 38 of *The Code*, was that the proceedings against the putative father of a bastard should be "prosecuted by the State" like a "public offence," with a view to insuring the payment of fine and costs, and an allowance appropriated to the support of the child, in order to indemnify the county. But while a bastardy proceeding is not prosecuted "for the enforcement or protection of an individual right," or "the redress or prevention of a wrong" (*The Code*, §§ 126 and 127), it was held by this Court in *State* v. *Pate*, Busbee, 244, that the statute in force before 1879 did not make it a criminal action, because a person

" could not be put to answer any criminal charge but by indictment, presentment or impeachment." Const., Art. I, § 12. Though prosecuted in the name of the State, it was declared that the "object of the suit was not to punish the defendant for an act done to the injury of the public, but to indemnify the county against liability for the support of a bastard child." *State* v. *Pate, supra.* The statute from 1741 to 1879 contained substantially the same provision, using precisely the same language as to the consequences of a finding against the putative father, viz., that he should " stand charged with the maintenance of the same (the child), as the county Court shall order, and give security," etc. Act of 1741, ch. 30 (1 Potter's Rev., p. 144, § 10); Haywood's Man., p. 446; Act of 1814, chs. 870 and 871 (2 Potter's Rev., p. 304); 1 Rev. Stat., ch. 12, § 4; Rev. Code, ch. 12, § 4; Bat. Rev., ch. 9, § 4. It was because of the marked distinction between a statute of that kind and one that imposed fine or imprisonment as a punishment that Judge DANIEL drew the marked distinction between the proceeding in bastardy and the trial of a criminal action by a Justice of the Peace. *State* v. *Carson*, 2 Dev. & Bat., 370. " Before we quit the case (said the learned Judge), perhaps it may not be improper to remark that there is some difference of construction by the Courts in cases of orders of Justices in bastardy, and convictions of Justices under penal statutes and for petty offences. Orders of Justices in bastardy cases are police regulations, having for their object solely an indemnity of the county from money liabilities. They do not partake of the nature of criminal offences. Therefore, every intendment will be made to support an order of Justices in bastardy. Convictions before Justices are generally for petty offences which partake of a criminal nature. Generally the offences are created and the jurisdiction to the Justices is given by acts of the Legislature. The Court thus created being an inferior one and of a limited jurisdiction, proceeding not according to the course of

the common law, it has been invariably the practice, in favor of liberty and law, for the Superior Courts of general superintending jurisdiction to hold these inferior Courts to strict rules when they attempt to exercise a jurisdiction in any matter savoring of a criminal nature."

When, however, the Legislature passed the Act of 1879 (ch. 92, § 2—*The Code*, § 35), providing that " when the issue of paternity shall be found against the putative father, or when he admits the paternity, he shall be fined by the Justice not exceeding the sum of $10, which shall go to the school fund of the county," like all other fines imposed on conviction in criminal prosecutions, it would seem that the obvious effect of the change of the law was to create a petty criminal misdemeanor, and to so limit the punishment as to make it cognizable before a Justice of the Peace. The Constitution of 1868 and also the amended Constitution of 1875 conferred this power on the Legislature in plain terms (Art. 1, § 13, and Art. 4, § 27); while under the Constitution of 1835 there was no exception to the rule that all criminal prosecutions must begin by indictment, presentment or impeachment. *State* v. *Pate, supra.* The reasons given by Judge PEARSON for declaring the old proceeding a civil one seem to have been fully met when we consider the effect of the later act construed in the light of the new provisions in the organic law. One of the objects of the law is to punish the offender by imposing a fine. The defendant can be lawfully convicted of a petty misdemeanor when the punishment cannot exceed a fine of $50 or imprisonment for one month without the intervention of a grand jury on the warrant of a Justice of the Peace in the nature of an indictment.

Unless, therefore, we were to concede that the imposition of a fine to be appropriated to the same purpose as all fines imposed on conviction upon indictments is not a punishment, we are driven to the conclusion that the Legislature in the exercise of its power created another petty misdemeanor by

the Act of 1879, attaching as an additional consequence of conviction the old police regulation for the indemnity of the county against the cost of supporting the child. It may be well, therefore, to determine what is the legal effect of imposing a fine. Says Lord COKE (1 Coke on Lit., 126b): "Here a fine signifieth a pecuniary punishment for an offence or a contempt committed against the King."

"A fine is a pecuniary punishment for an offence or a contempt committed imposed by the judgment of a Court." 7 Am. & Eng. Enc., 991.

"The ordinary punishment for misdemeanors is fine or imprisonment at the discretion of the Court. * * * Where the statute commands an act of a public nature, and is silent as to the punishment, the common law provides fine or imprisonment." 1 Bish. Cr. Law, § 940.

The act, therefore, not only brings the warrant for bastardy within the definition given by the Court in Pate's case, but also within the statutory definition of "an action prosecuted by the State, as a party, against a person charged with a public offence, for the punishment thereof." *The Code,* § 129. The parties to a warrant for bastardy are the State and the putative father, and if a fine of not exceeding ten dollars is a punishment, then the statute creates a criminal offence, which is the subject of a criminal action. The word "criminal" means "punishable by law, human or divine." Century Dictionary. Since other corporal punishments than hanging were forbidden by the Constitution of 1868, the Legislature can impose as a penalty for crime only fine or imprisonment in the common jail or in the State prison, or any two or all three of these punishments. "In criminal law, a fine is a sum of money ordered to be paid by an offender as a punishment for an offence. A fine at common law is one of the punishments for misdemeanors, and it has been made a punishment for many offences by modern statutes." 1 Rapalje's Law Dict.

There can be no question as to the power of the Legislature to make the begetting of a bastard child a misdemeanor, and to so limit the punishment as to make it cognizable before a Justice of the Peace, or to create a special Court with concurrent jurisdiction of such petty misdemeanors or the exclusive right to try higher offences. *State* v. *Powell*, 97 N. C., 417.

It is true that while the question of the construction to be given to the Act of 1879 had never been raised until this case was argued on appeal, this Court has, *obiter*, conceded that the proceeding was still civil in its character, without adverting to the fact that the Act of 1741 had imposed a fine. See *State* v. *Bryan*, 83 N. C., 611; *State* v. *Peebles*, 108 N. C., 768; *State* v. *Edwards*, 110 N. C., 511. In none of these cases was the attention of the Court directed to the Act of 1879, and the alteration in the organic law since the older cases of *State* v. *Carson* and *State* v. *Pate* were decided. It is true that in *State* v. *Crouse*, 86 N. C., 617, an exception was taken on the ground that the proceeding was a criminal one, but we search in vain for an intimation that the attention of the Court was called to the fact that the Act of 1879 imposed a fine. It is evident that the Justice (ASHE) who delivered the opinion was not advertent to that change, since he does not notice it, and says, what is not correct, that the only change made in the old law was " to leave it entirely to the option of the woman, as a general rule, whether she would institute proceedings against the father." Did the Legislature intend to leave the allowance unaffected when the amount was limited to $50 and a fine was substituted instead of the additional sum that might have been previously exacted for the support of the child? I think not. But, however that may be, we think that we cannot classify a warrant charging a defendant with bastardy as a civil action or a special proceeding, since he is subject to a fine imposed as a punishment. It does not follow that the rule of evidence which gives artificial effect to the examination of the woman is altered. The

Legislature has the power to make cases of this nature an exception to the general rule, and to make the examination of the woman presumptive evidence, just as it has made the fact of escape by one lawfully committed and charged with a crime *prima facie* evidence on an indictment against the Sheriff or jailer. *The Code,* § 32; *State* v. *Rogers,* 79 N. C., 609; *State* v. *Bennett,* 75 N. C., 305.

I have examined very carefully the decisions of other States of the Union upon this subject, and, while most of them have construed statutes of similar import to our Act of 1741 (kept in force till 1879) as police regulations, as distinguished from criminal laws on the one hand, and, on the other hand, as not within the inhibition of the constitutional provision in reference to imprisonment for debt adopted in all of the States and expressed in almost the same words, we have failed to find a single act elsewhere which imposes a fine in addition to the allowance exacted for the support of the bastard and the indemnity bond. See 2 Am. & Eng. Enc., pp. 144 and 145. If the sentence to pay a fine and costs was imposed upon conviction of a criminal offence, and the defendant had already taken the prescribed oath, he was not liable to arrest for failure to pay the fine. So it follows that he is now neither liable to imprisonment on account of the non-payment of the fine to the State, which was imposed as a punishment, nor for default in the payment of the allowance exacted of him for the indemnity of the county. In either of the double aspects of the case, and in both, whether the proceeding be criminal or civil in its nature, the ruling of the Court below was erroneous. The judgment is reversed and the defendant is entitled to be discharged.

Reversed.

CLARK, J.: I assent to that part of the opinion which is the opinion of the Court, but dissent from the views of Mr. Justice AVERY as to the nature of the action.

The getting a bastard child is bad in morals, but I do not think the Legislature ever intended to make it either a crime or an indictable offence. The statute is, in substance, such as it has always been, and which has uniformly been held a purely fiscal arrangement, or a police regulation, to prevent the child becoming a charge upon the county. The addition, by the Act of 1879 (*The Code*, § 35), of a fine of "ten dollars, which shall go the school fund of the county," is not sufficient to turn the matter into a crime. The imposition of the ten dollars is in furtherance of the main design of a fiscal provision and rather in the nature of a tax to be contributed towards educating the children of the county. This is shown by the fact that it is placed at a definite fixed sum and not "not to exceed" a certain sum, or "in the discretion of the Court," as is usual in prescribing a punishment for criminal offences. Also, by the fact that in numerous cases which have come to this Court since 1879 the Court has never held or intimated that the addition of these words had changed the action, heretofore always held to be a civil proceeding, into a criminal one.

Owing to its peculiar nature, the enforcement of a police regulation for fiscal purposes, this action has some anomalous features. These have recently been pointed out and the authorities reviewed in *State v. Edwards*, 110 N. C., 511. In that case it is expressly noted that a fine is imposed. The Court was not inadvertent to it. But it held, as had uniformly always been held ever since the Act of 1879, that it was a civil proceeding. *State v. Peebles*, 108 N. C., 768; *State v. Wilkie*, 85 N. C., 513; *State v. Bryan*, 83 N. C., 611, all of which were since the Act of 1879.

Indeed, in *State v. Crouse*, 86 N. C., 617, the point was expressly taken that the Act of 1879 (now *The Code*, § 35) made the action a criminal one, and hence that no appeal lay. The Court held that it was still a civil proceeding, and that the woman could appeal. ASHE, J., says that "the only

alteration of the law with regard to bastardy effected by the Act of 1879, and all that we think was intended to be effected," was that it was to become optional with the woman to institute proceedings, except where the child was likely to become a charge upon the county. If the intent of the Act of 1879 was to make this a criminal proceeding, it is singular, to say the least, that *The Code* of 1883 should retain the provision in section 32, that "the affiant, the woman or the defendant," may appeal; or, that by the same section, the examination of the woman should not only be competent to be read as evidence, but is presumptive evidence.