STATE v. WILLIAM L. OSTWALT.

*Bastardy Proceedings—Appeal by State in Criminal Actions—Autrefois Acquit—Constitution.*

1. A preceeding under the existing statutes upon the subject of bastardy is a criminal action of which a justice of the peace has jurisdiction.
2. Being a criminal action, the defendant cannot, under the Constitution, be twice put in jeopardy, and an acquittal by a justice of the peace is final and conclusive, and unreviewable upon the appeal of the State or prosecutrix.
3. The clause in Section 32, *The Code*, allowing an appeal by the "affiant or the woman" is unconstitutional.
4. Cases in which the State can appeal in criminal actions pointed out by AVERY, J.

CLARK, J., dissents.

PROCEEDING IN BASTARDY, commenced before a justice of the peace, charging the defendant with being the father of her unborn bastard child. The defendant was acquitted, and the prosecutrix appealed to the Superior Court.

This case, on appeal, came on for trial at August Term, 1895, of IREDELL Superior Court, before his Honor, *Nor-*

*wood*, *J.*, and a jury. In said court the defendant entered the plea of former acquittal and not guilty. The following issues were submitted to the jury by the court :

"1. Is the prosecutrix bound by a former acquittal, upon a trial before a justice of the peace ? Answer, ' No.'

"2. Is the defendant the father of the bastard child of the prosecutrix ? Answer, ' Yes.' "

Defendant was convicted, and appealed.

Defendant excepted to the overruling of his plea of former acquittal.

*The Attorney General*, for the State.
*Mr. L. C. Caldwell*, for defendant (appellant).

AVERY, J. : In the Act of 1879, Ch. 92, Sec. 2, (*The Code*, Sec. 35,) it was provided that " when the issue of paternity shall be found against the putative father, or when he admits the paternity, he shall be fined by the judge or justice not exceeding ten dollars, which shall go to the school fund of the county." In the same section it was provided further that " the court shall make an allowance to the woman not exceeding the sum of fifty dollars, to be paid in such installments as the judge or justice shall see fit," &c. This provision was first enacted in the chapter of the Acts of 1879 which was passed for the purpose, as appears upon its face, of enlarging the criminal jurisdiction of justices of the peace (under the Constitution, Art. IV., Sec. 27) by limiting the punishment so that it could not exceed a fine of fifty dollars or imprisonment for thirty days. After the passage of the Act, however, the attention of this Court had never been called to the fact that a fine was imposed by this statute until the argument of the case of *State* v. *Burton*, 113 N. C., 655. The Court agreed to rest the decision in that case upon other

STATE v. OSTWALT.

grounds, but the Justice who delivered the opinion of the Court discussed the question, and expressed for himself the opinion that the Act of 1879 had made bastardy a criminal offence, cognizable originally before a justice of the peace. At the next succeeding term the Court held, in *Myers* v. *Stafford*, 114 N. C., 234, (Justice McRae delivering the opinion and Justice CLARK dissenting), that section 35 of *The Code* made bastardy a petty misdemeanor, and consequently that the county commissioners were not liable for damages for putting a defendant convicted of that offence to work on the public roads until the fine and costs should be paid. At the next term the ruling of the Court that the proceeding was a criminal action was affirmed (in *State* v. *Parsons*, 115 N. C., 730,) and it was held by an undivided Court that, where there was a *verdict of guilty*, the defendant must be discharged from custody, and relieved of all liability as to the fine of ten dollars and the costs, upon remaining in jail for the requisite time and taking the prescribed oath. But it was held in those cases that the allowance of fifty dollars, while the making of it was contingent upon a finding that the defendant was the father—as was the imposition of the fine— was still, like the old allowance, imposed under that part of the Act passed by the Legislature in the exercise of its power to enact police regulations, but that, as the Act made the allowance payable to the mother, she became, in contemplation of law, a creditor of the defendant, and could, under Section 2948 of *The Code*, suggest fraud and contest the defendant's right to discharge, as an insolvent, from its payment.

In *State* v. *Wynne*, 116 N. C., 981, the Court, as now constituted, held, without a dissent, that bastardy was a criminal offence complete on the begetting of the child,

and was within the exclusive jurisdiction of a justice of the peace for twelve months thereafter.

We are now urged to overrule all of those adjudications made upon full consideration of the question by two courts—the majority of the members of which were differently constituted—and declare that the imposition of a pecuniary fine as a punishment for a violation of law does not, *ipso facto*, create a criminal offence. This persistent effort on the part of counsel to overturn the former rulings of the Court makes it necessary to again adduce the authorities upon which they were founded.

The Constitution of 1868, as amended in 1875, (Art. I., Sec. 13., and Art. IV., Sec. 27,) had authorized the Legislature to provide for the trial of petty misdemeanors without the intervention of a jury, and the boundary line of a justice's jurisdiction should depend upon the punishment prescribed by statute. It must be inferred that, when the Legislature associated bastardy with a number of misdemeanors, the punishment whereof in the same act was reduced so as to make them cognizable before a justice, it was not accidental, but with a purpose to constitute it a criminal offence, that for the first time it was made punishable by a fine of ten dollars. But not only do the circumstances indicate an actual intention on the part of the Legislature to create a criminal intention, but the apt words used, *ex vi termini*, can be construed to mean nothing else. Was the construction of the Act of 1879, in the three recent decisions of this Court, erroneous, as it is now contended it was?

It is familiar learning that words in a statute must be construed according to their technical meaning, unless a contrary intent is apparent upon the face of the act. Under this rule what must be the interpretation of the provision, that on the admission that the defendant is the

father, or the finding of the issue of paternity, " he shall be fined by the judge or justice of the peace not exceeding ten dollars, which shall go to the school fund of the county ? " "A crime is an act made punishable by law." Broom's P. of Law, Sec. 162 ; 1 Wharton's Cr. Law, Sec. 14, and note. "A crime," says Bishop, " is any wrong which the government deems injurious to the public at large and punishes through a judicial proceeding in its own name." 1 Bishop Cr. Law, Sec. 32.

Under the Constitution of North Carolina the death penalty can be inflicted in four cases only, all other capital punishment being forbidden. The Legislature is empowered to prescribe as a punishment for all other criminal offences either a fine or imprisonment (with or without hard labor) or both.

When an act affecting the public is forbidden by statute, says Bishop, " the doing of it is indictable at common-law." *State* v. *Parker*, 91 N. C., 650 ; 2 Arch. C. L., 2 ; 2 Hawks. P. C., Ch. 25, Sec. 54 ; 1 Bishop Cr. L , Section 237. If a crime is a wrong or an act punishable by law in a proceeding conducted in the name of the State, it would seem that there can be no controversy about the fact that this proceeding, conducted in the name of the State, in order to carry out a police regulation, became a crime when made punishable by law by fine appropriated to the school fund, as are all other fines imposed on conviction for crime. It seems never· before to have been doubted that the Legislature creates a criminal offence whenever it prescribes that a certain act shall be punishable either by fine or imprisonment, or forbids it generally, and by implication empowers the courts to impose either fine or imprisonment, as is the case where the law simply declares that a certain act shall be deemed a misdemeanor, without providing how it is to be punished. *State* v.

*Hatch*, 116 N. C., 1003; *State* v. *Hawkins*, 77 N. C., 494; 1 Bishop Cr. Law, Sec. 940.

" A fine (says Lord COKE, 1 Coke on Lit., 126b) signifieth a pecuniary punishment for an offence or contempt committed, imposed by the judgment of a court." 7 Am. & Eng. Enc., 991. If a fine is either a punishment for a criminal offence or a contempt, there being no pretense that begetting a bastard is a contempt, it must be a criminal offence.

The Scotch definition of a criminal offence, which was founded upon principles identical with the common-law, declared an act made punishable by law, either by corporal punishment or pecuniary mulct, to be a crime. McKenzie Cr. Law, 3.

The Act of 1791, Potter's Revisal, p. 14, Sec. 10, and all subsequent enactments, contain substantially the same provision as is still contained in Section 32 of *The Code*, that the father, upon the finding of the issue of paternity against him, " should stand charged with the maintenance of the child, as the court may order, and shall give bond, &c." Haywood's Manual, p. 446; Act of 1814, Ch. 870, 871; 2 Potter's Revisal, p. 304; 1 Revised Stat., Ch. 12, Sec. 4; Revised Code, Ch. 12, Sec. 4; Battle's Rev., Ch. 9, Sec. 4.

The Act of 1879, which is embodied in Section 35 of *The Code*, is in direct conflict with the language quoted from Section 32, in providing that " the court shall make an allowance to the woman, not exceeding the sum of fifty dollars, to be paid in such installments as the judge or justice shall see fit, and shall give bond, &c," instead of standing chargeable to the county as to amount as well as date of payment, as the court might determine. Clearly the effect of the passage of the Act of 1879 was, until *The Code* took effect in 1883, to repeal this portion of the old

STATE *v.* OSTWALT.

Revised Code as compiled in Battle's Revisal. Either the court had the power to make an unlimited allowance or one limited to $50. It is manifest that the commissioners inadvertently brought forward and the Legislature inadvertently enacted in *The Code* provisions apparently conflicting. In the same way the later provision of *The Code*, (Section 35,) in making bastardy a criminal offence, deprives the State of the right of appeal from a verdict of not guilty. " The pre-existing law and practice, recognized and enforced in numerous adjudications," said the Court in *State* v. *Powell*, 86 N. C., 640, " had settled the principle that, when a party charged with any offence before a tribunal of competent jurisdiction has been tried and acquitted, the result is final and conclusive, and no appeal is allowed the State to correct any errors committed by the court, and this has been uniformly maintained *since the adoption of the new Constitution*, as before. *State* v. *Jones*, 1 Murphy, 257 ; *State* v. *Taylor*, 1 Hawks., 462 ; *State* v. *Martin*, 3 Hawks., 381 ; *State* v. *Credle*, 63 N. C., 506 ; *State* v. *Philips*, 66 N. C., 646 ; *State* v. *West*, 71 N. C., 263 ; *State* v. *Armstrong*, 72 N. C., 193. The right of the State to appeal from erroneous rulings in the court below exists only where judgment is given for the defendant upon a demurrer to the bill, or upon a special verdict, or on a motion to quash, or in arrest of judgment. *State* v. *Lane*, 78 N. C., 547 ; *State* v. *Swepson*, 82 N. C., 541 ; *State* v. *Moore*, 84 N. C., 724." The reason given by Chief Justice PEARSON and Judge DANIEL in *State* v. *Connor*, 2 Dev. & Bat., 370, and *State* v. *Pate*, Busbee, 244, for declaring that the Legislature had no power to make a criminal offence and provide for its trial, without indictment or presentment, ceased when power was given to the Legislature (Constitution, Art. IV. Sec. 14) " to provide other means of trial for petty misdemeanors." A justice's court

now has jurisdiction to try misdemeanors, and the Attorney General frankly conceded that no appeal on the part of the State lies from a finding of a court of competent jurisdiction that a defendant is not guilty. When the Constitution was so altered as to permit the substitution of the justice of the peace as a trier of the fact, for the jury, as intimated by Chief Justice SMITH in *State* v. *Powell, supra,* the principle was in no way changed. In speaking of the constitutional provision that no person shall be twice put in jeopardy of life or limb, Bishop (1 C. L., Sec. 997 ) says: "We have seen elsewhere that while so much of a statute as is against the accused is interpreted strictly, the parts in his favor are extended liberally, and the same distinction applies to a written constitution. Therefore the constitutional provision now under consideration should be liberally construed as covering cases within its reason while not within its words, on which principle, plainly, the courts should, as we have seen they generally do, hold it applicable to misdemeanors, the same as to treason and felony." Again Bishop says, (1 C. L., Sec. 1026,) " A statute, which by a device of an appeal by the State undertakes to authorize the retrial of one acquitted on a valid indictment, is void."

Granting, then, that the Act of 1879 created a criminal offence, the re-enactment of the old provision, in Section 32 of *The Code,* that " from the judgment and finding, the affiant, the woman, or the defendant may appeal to the next term of the superior court &c.," would be void, if the principle is properly stated by Bishop. It is the duty of courts however, as far as it can be done without violating a constitutional principle, to reconcile apparent conflicts in two statutes, and construe them so as to give effect to both. *Winslow* v. *Morton,* at this Term. It has been held in *State* v. *Wynne, supra,* that the criminal offence is within

the exclusive jurisdiction of a justice for twelve months from the time the child is begotten ; and, if that was true, the justice here had jurisdiction, and any statute providing for an appeal would be *pro tanto* void.    While the defendant on conviction may be committed to a house of correction or to prison, yet when committed to prison or prayed into custody, without further action by the State or the complainant, he will be discharged on taking the required insolvent oath.    *State* v. *Burton* and *State* v. *Wynne, supra ; Myers* v. *Stafford*, 113 N. C., 234.    In these cases the right of the mother has been held to be an incidental one growing out of conviction, which was compared to the right to have a nuisance abated in certain instances, and it is difficult to see how we could have gone further, in the face of the prohibition against placing a person twice in jeopardy—subject a defendant to a second trial.    The utmost length that this Court has gone, since attention was called to the Act of 1879, was when it was conceded that, after conviction, (not after acquittal,) the mother acquired the rights of a judgment creditor, and, where she showed due diligence in giving notice, could insist upon contesting the right to discharge as an insolvent on the part of the defendant, and might appeal in apt time to vindicate her right.    This privilege can be given her under the statute without infringing the constitutional rights of the defendant.    But the unfortunate bringing forward of the old statute could not annul rights acquired under the later statute, embodied in a subsequent section of *The Code*.    After the passage of the Act of 1879, and before the attention of this Court was called to the fact that a fine had been imposed by that act, several cases came before this Court, which were cited in *State* v. *Burton*, and have been considered in every subsequent opinion in which this subject has been discussed.    It would seem

needless to thresh over such old straw for the fourth time. The fact that the imposition of a fine creates a criminal offence is none the less true because the court overlooked for a time the fact that it had been done.

For the reasons given, the judgment of the court below is reversed, and the defendant is entitled to be discharged.

Reversed.

CLARK, J. (dissenting): Up to and including *State* v. *Edwards*, 110 N. C., 511, (in which the authorities are collected,) the decisions of this Court were uniform that proceedings in bastardy were civil not criminal. In *State* v. *Burton*, 113 N. C., 655, it was intimated, but not decided, that they might be construed to be criminal actions. This has been followed by *Myers* v. *Stafford*, 114 N. C., 234, (dissenting opinion, p. 689,) which held, by a divided Court, that it was a criminal action, and two decisions to that effect have since been made, but the constantly increasing perplexity and difficulties arising from this construction, and which threaten to virtually nullify the act, warn us to return to the ancient land-marks and show the peril of departing from them.

For the first time, the effect of the new departure has brought us face to face with this question. The Legislature has provided (*Code*, Sec. 32) that from the judgment and finding on the trial before the justice, " the affiant, the woman or the defendant may appeal to the next term of the superior court of the county where the trial is to be had *de novo*." Now, we are asked to nullify this express provision of the law-making power upon the ground that, this being a criminal action, no appeal lies from the judgment of the magistrate if in favor of the defendant. The power of the Legislature to enact laws cannot be abridged or denied except when their action is clearly contrary to

some provision of the Constitution. But it is contended ·that *The Code*, Section 35, authorizing a fine of ten dollars, turns the action into a criminal proceeding, and *ergo* the express provision, Section 32, giving affiant or the woman the right to appeal, is abrogated and of no effect. This cannot be so.

1. If Sections 32 and 35 are incompatible, the provision of Section 35, authorizing the $10 penalty, should be held nullified, rather than the express provisions of Section 32. To disregard the latter is to change the whole nature of the proceeding. In construing statutes, particular stress is laid upon the mischief to be remedied. The mischief to be remedied here is not to make the begetting of a bastard child a criminal offence and to collect the petty penalty of $10 therefor. Clearly not, for there is already the criminal offence of fornication and adultery, admitting of far heavier penalty and even when no child is begotten. Besides, if bastardy is a criminal offence, the woman would be liable as an aider and abetter, a co-principal, which is clearly not contemplated by the statute. The object of the statute, through and through, is to provide for the maintenance of the child and prevent its being a charge upon the county, which is a civil, not a criminal, proceeding. This is the evident purport of the whole chapter on bastardy, and has been so recognized by a long and, until very recently, an unbroken line of decisions. Section 32 directs that the judgment, if against the defendant, shall be " for the maintenance of the child," a civil judgment. If the incidental power given by Section 35 to impose a penalty of $10 conflicts with the entire balance of the chapter, and the evident purpose of this long-established legislation, then that provision should be held a nullity, and not the other provisions and evident intent of the entire chapter.

STATE v. OSTWALT.

2. But the addition of the penalty of $10 cannot consistently be held to change this proceeding, which is essentially civil in its nature, and has always been so held till very recently, into a criminal action.    In exactly similar manner it is provided that the board of county commissioners are liable in certain cases for all losses sustained in the collection of taxes, and also guilty of a misdemeanor, and liable to a fine of not less than $500.   *Code*, Section 2075.   Again, *The Code*, Sec. 2703, provides that the sheriff, for failure to make proper returns of the election for State officers, is liable to forfeit $2,000 to any one who shall sue for the same, and shall be guilty of a misdemeanor punishable by imprisonment in the penitentiary. In the same manner, a penalty of $2,500 is allowed against the sheriff for failure to settle his taxes, and is added to the amount of the judgment, (*McKee* v. *Davenport*, 98 N. C., 500,) but it was not held that this made such proceeding a criminal action.    There are numerous like cases. Can it be contended that, because in these cases a fine or imprisonment is imposed, the civil action is turned into a criminal proceeding, so that the defendant has the benefit of a superior number of challenges, the benefit of reasonable doubt, and, if he gets a verdict by errors of the judge in the court below, there is no review by an appeal?    In bastardy proceedings the woman is given the right to institute proceedings to obtain judgment for the maintenance of the child by the defendant, and that he pay in a sum fixed by the court for that purpose; and if the penalty of ten dollars is a criminal proceeding, it is simply, as in the above instances, a separate matter which cannot change the woman's civil remedy into a criminal proceeding which would protect the man from review by appeal if the civil issue is found in his favor.    If the provisions of Sections 32 and 35 are incompatible, the latter, being merely inci-

dental, and not the former, should give way. They should, however, rather be construed together, and, if so, Section 32 gives the woman a civil proceeding, and Section 35 is a criminal proceeding, (as in so many sections of *The Code*, of which two sections are above cited,) for the petty penalty limited to $10.

3. If, however, the recent doctrine were reiterated that the incidental $10 penalty changes the whole nature of the proceeding, still it does not follow that the express provision of the statute, giving the woman the right of appeal, is unconstitutional. The provision that no one shall be twice in jeopardy means simply that no one shall be tried *in another action* for a criminal offence after a verdict either of conviction or acquittal in a trial for the same offence. It does not forbid a review of the same case by appeal, which is merely a continuation or prolongation of the same. It is true that appeals, except on special verdicts and in certain other limited cases, are not given to the State. But that restriction is simply by virtue of the statute and not by any constitutional provision. *State* v. *Taylor*, 8 N. C., (1 Hawks.,), 162, is put expressly on that ground, and is cited as authority for a similar ruling in *State* v. *Credle*, 63 N. C., 506. Accordingly, appeals from a general verdict of not guilty were recognized in this State, (*State* v. *Haddock*,) 3 N. C., 162 (348); *State* v. *McLelland*, 1 N. C., 353 (569), till restricted by statute, Acts 1815, Ch. 895. But even if this be a criminal proceeding, the Legislature has chosen to give the " woman and the affiant " the right to appeal, and in so doing the legislative department acted within the limits of its constitutional authority. That an appeal can be authorized by statute on behalf of the State from a judgment discharging the prisoner on a special verdict, or on a motion to quash, or in arrest of judgment, or from a verdict pro-

cured by fraud, is conclusive that the cases in which the State can appeal from a judgment and verdict in favor of the defendant are to be determined by the statute law. If this be a criminal action, *The Code*, Section 32, by giving the affiant or the woman the right of appeal, has simply added this proceeding to the instances in which the State can appeal from a judgment discharging the defendant. The matter lies entirely with the people acting through their representatives in the Legislature. It is not likely that they will increase the number of instances, already existing by law, in which the State can appeal from a judgment in a criminal action discharging the defendant, but power exists. The Constitution forbids that a defendant be tried for the same offence in another action. The statute allows a defendant to apply for another trial in the same action, and that the State may do the same in certain specified instances. It is in the legislative power to increase or diminish at will the instances in which the State may have the matter re-examined upon appeal.

MONTGOMERY, J.: I concur in the dissenting opinion.