STATE v. ED. WHITE.

(Decided December 5, 1899.)

*Bastardy Proceedings—Insolvent Debtor's Act—Code, Chap. 27.*

1. Under the Act of 1879, chap. 92, Code, sec. 31, bastardy is a misdemeanor, and exclusive original jurisdiction is conferred on Justices of the Peace. *State v. Oswalt,* 118 N. C., 1208.

2. A defendant convicted of bastardy may be discharged from imprisonment by complying with the provisions of the insolvent debtor's act, Code, sec. 2967.

3. *Quaere de hoc*—Are the statutes on the subject of bastardy in accord with Art. IV, sec. 27, of the Constitution?

PETITION of defendant, convicted of bastardy, to be allowed to take the benefit of the insolvent debtor's act, made

before the committing Justice, who disallowed the petition, and heard, on appeal, before *Moore, J.,* at September Term, 1899, of the Superior Court of WAKE County.   The defendant had pleaded guilty, in the Justice's Court, of the misdemeanor of begetting a bastard child on the body of Hattie E. Hunter.   "Whereupon, it was adjudged that the defendant pay into court the sum of $40 as an allowance to Hattie E. Hunter, and to cover the costs of this case, to be paid, $5 this 27th day of June, 1899, and beginning Saturday, July 8, 1899, he pay $1 each week until the full sum of $40 shall be paid, and that he pay a fine of one cent.   And in default of the payment of any installment of this judgment, as it becomes due and payable, then the whole amount shall be due and payable, and he shall be committed to the house of correction for such time as will cover such balance due, including costs of capias and jail fees, and the cause is held for further action.

| | |
|---|---|
| Allowance to Hattie E. Hunter | $37.40 |
| J. P. costs—H. H. Hunter | 1.30 |
| Constable fee—J. E. Potter | 1.30 |
| Fine to use school fund | .01 |
| | 40.01 |

"This 24th day of July, 1899, the said Ed. White, having failed in the payment of two weekly installments, it is ordered that an instanter capias issue, and on the 24th day of July, 1899, I issued an instanter capias to J. E. Potter, Constable.   Capias returned July 25, 1899, and Ed. White, being produced in court, is committed to the house of correction of Wake County, for a term of six months, in accordance with the foregoing judgment.

Amount due to use Hattie E. Hunter . . . . .$33.20
J. P. fees—H. H. Roberts . . . . . . . . . . . . .     90
Officer—J. E. Potter . . . . . . . . . . . . . . . .   1.00
Jail—M. W. Page . . . . . . . . . . . . . . . . . . .    90
                                                       ————
County allowance to prisoner $6.00 per mo. $36.00

"And a commitment, accompanied by a copy of the judgment, was transmitted to the sheriff and jailor of Wake County; also, a copy of the same filed with the Clerk of the Board of County Commissioners. And on the 28th day of August, 1899, the said Ed. White, by his attorney, R. N. Simms, Esq., filed with me his petition, under chap. 27, vol. 2, of The Code. praying that he be allowed to take the insolvent debtor's oath, and be discharged from his imprisonment. * * * It is considered and adjudged that the prisoner's petition be denied, and Ed. White is remanded to the custody of the Superintendent of the House of Correction. This 11th day of September, 1899.

"H. H. ROBERTS, J. P."

From this judgment, denying his petition, the prisoner appealed to the Superior Court.

Upon the hearing of the appeal, his Honor declined to grant the motion to discharge the defendant, and remanded him to the authorities of Wake County to serve out the judgment imposed by the Justice of the Peace.

Defendant excepted, and appealed to the Supreme Court.

*Messrs. Douglass & Simms,* for appellant.
*Mr. J. C. L. Harris,* with the *Attorney-General,* for the State.

FAIRCLOTH, C. J.    The defendant plead guilty to the

STATE *v.* WHITE.

charge of being the father of the bastard child of Hattie E. Hunter. The Justice of the Peace imposed a small fine, and ordered an allowance of $40, to be paid in weekly installments by defendant. Failing to make said payments, the defendant was committed by the Justice, on July 24, 1899, to the house of correction for six months. The County Commissioners allowed defendant compensation at $6 per month. On August 28, 1899, defendant filed a petition to be allowed to take the "insolvent debtor's" oath, and to be discharged from imprisonment, under the provisions of The Code, chap. 27, which was refused by the Justice, and on appeal, his Honor refused said petition, and remanded the petitioner to serve out the term of the judgment, and defendant appealed to this Court.

The Act of 1879, chap. 92, Code 31, conferred exclusive original jurisdiction on Justices of the Peace to try all proceedings in cases of bastardy, and in case of conviction or confession, imposed a fine not exceeding ten dollars, on the putative father, and authorized an allowance to the mother, not exceeding fifty dollars.

This Court has frequently held that this statute makes the father of a bastard guilty of a criminal offense, that is, a misdemeanor. *Myers v. Stafford,* 114 N. C., 234; *State v. Oswalt,* 118 N. C., 1208. Can the defendant be discharged from imprisonment by complying with the provision of the insolvent debtor's act? This is the main question presented. Code, 2967, provides that the following persons may be discharged by complying with this chapter: (1) Every putative father of a bastard committed for a failure to give bond, or to pay any sum of money ordered to be paid for its maintenance. (2) Every person committed for the fine and costs of any criminal prosecution. Code, 2968. "Every such person having remained in prison for twenty days" may apply

by petition, etc., and be discharged on taking the oath pre-scribed in that chapter. The Code, 3448, authorizes the Board of Commissioners and Mayors to provide for working on the public highways all persons imprisoned for misde-meanors, etc., in their counties.

*State v. Giles,* 103 N. C., 391, was a case of bastardy. The judgment was a fine, and an allowance for the woman, and costs. The Court held that the requirement to pay the amounts declared was not a punishment for a criminal offense, but the exercise of a power to enforce obedience to the order of the court, and that the party might be relieved from the imprisonment, under the insolvent laws, as if committed for fine and costs in a criminal prosecution. *State v. Davis,* 82 N. C., 610, was for an affray, and the judgment was a fine and costs, and commitment until payment was made. It was held that the defendant, after remaining in jail 20 days, might be discharged, upon taking the insolvent's oath then required, now in The Code, 2954.

*State v. Burton,* 113 N. C., 655, was well considered. The defendant was found guilty on a charge of bastardy and com-mitted for non-payment of fine and allowance for the woman. He was discharged by the Clerk, under the provisions of The Code, 2967, 2972. He was subsequently arrested and com-mitted to the house of correction, by the Judge of the Supe-rior Court, for failing to pay said amount under The Code, 38. On appeal, it was held, upon several cited cases, that defendant was properly discharged, and that the subsequent sentence of the Judge was erroneous.

In *State v. Oswalt,* 118 N. C., 1208, the Court repeated that a bastard proceeding was a criminal action, and that if defendant was imprisoned thereunder, he, after remaining in jail, or the house of correction, for 20 days, will be dis-charged on taking the required insolvent's oath. There are

other decided cases to the same effect.   We are now asked to overrule these several decisions, and *State v. Nelson,* 119 N. C., 797, is relied on as authority for so doing.   On examination, we find that the question now before us, was neither discussed nor decided in that case.   This Court feels as ready to correct its own error, when discovered, as that of any other court, and will do so promptly, before the mischief shall becme too wide-spread.   We, however, see no reason for overruling the above-named decisions of our predecessors.

The constitutionality of our statutes on the subject of bastardy, under Art. IV, sec. 27, is not presented by the facts in this case, and we will express no opinion on it until it is presented, and it becomes necessary to do so.

This will be certified to the end  that the Superior Court proceed according to this opinion.

Reversed.


MONTGOMERY, J., dissenting.   He thinks the main facts are identical with those in the case of *State v. Nelson,* 119 N. C., 797, and is quite sure that the question of law is the same in both cases.   In Nelson's case the question for decision was stated by the Court to have been, "whether it is competent for the Legislature to authorize a Justice of the Peace, instead of a County Commissioner, to order one convicted of bastardy, and who is unable to pay the fine, costs and allowance, to work upon the public roads, not as a punishment for the offense, nor as an incarceration for a debt contracted by him, but in the enforcement of a duty or obligation he owes to society, to protect the State or the county, one of its governmental sub-divisions, against the probable consequences of his own conduct."   And in that case the question was decided in the affirmative.   The same question is the one for decision in the case before the Court.   In Nelson's case the

time for which the defendant was sentenced, in which he was to work out the fine, costs and allowance, was fixed by the Justice; it was for a definite time; and that is the case here; and that is the distinguishing feature which differentiates *State v. Nelson* and the present case from those cited in the opinion of the Court. In the cases cited by the Court, the term of imprisonment was not for a definite period, but general, in the nature of a commitment for the payment of fine and costs, and it was, on that account, held that the defendant could take the insolvent debtor's oath and be discharged.

The effect of the decision of the Court in this case is, that hereafter those persons, who are convicted of the crime of bastardy and to pay the fine, costs and allowance, can escape all responsibility for their conduct by lying in the county jail for 20 days, and then swearing out under the insolvent debtor's oath.

In view of the decision in this case, it does seem that, if ever legislative aid was needed to protect the Commonwealth from the burdens of unjust taxation, it is necessary on the subject matter now before the Court. It does seem that society should be protected against that class of criminals who bring into life illegitimate offspring, at least in so far as to compel them, by law, to maintain that offspring with their means first, and in default of that, by compelling them to do work for the public in compensation for its care of their young.

CLARK, J., dissenting. The defendant, on June 27, 1899, pleaded guilty on a charge of bastardy, and upon default in the payment of the fine, costs and giving bond for allowance to the woman, aggregating $40, was sentenced to work on the public roads of the county, as provided by The Code, secs. 38 and 3448, for six months, so that the said sum should be

worked out at the rate allowed prisoners at work by the County Commissioners. On August 28th, the defendant filed with the Justice of the Peace his petition to be discharged as an insolvent debtor, under The Code, sec. 2967, which, after the 20-days' notice given, was heard by the Justice, and petition denied. On appeal to the Superior Court, the judgment of the Justice was affirmed, and an appeal was taken to this Court.

The Code, sec. 2967, was in the Revised Code of 1854, and was adopted at a time when, if one in jail in default of payment of fine and costs was not provided with some such mode of discharge, he would remain therein indefinitely. But it was felt that some other mode of discharge should be provided, and that it was a serious and unjust charge upon the public, that these prisoners should be discharged without burden to themselves, leaving the public to bear the real punishment by paying the cost of their trial and conviction, and also that it was bad policy that prisoners sentenced to the county jail for crime should lie therein in idleness, supported at the expense of the taxpayers. The Legislature, therefore, deeming it had power to so legislate, formulated public opinion in an act originally passed in 1866-'67, chap. 30, and which, after being several times amended, is now sec. 3448. This later act must be read in connection with sec. 2967, and is, in effect, an amendment thereto. It provides that the County Commissioners may work on the public roads all persons imprisoned in jail (1) upon conviction of any crime or misdemeanor, *or* (2) for failure to give bond to keep the peace, *or* (3) for failure to pay all the costs or give security therefor, and that the amount realized from working shall be credited on fine and costs, with a proviso that no such prisoner shall be detained longer *than a time fixed by the Court* (in the present case, six months), and a further proviso that no

prisoner shall be so worked out unless it is *authorized in the judgment of the Court.* And the same Legislature which enacted what is now Code, sec. 3448, above referred to, in pursuance of the same policy of protecting the taxpayers from paying the penalties and costs which criminals were able to, and should, work out themselves, passed chap. 10, Laws 1866-'67, which is now The Code, sec. 38, which provides: "When the putative father shall be charged with costs or the payment of money for the support of a bastard child, and such putative father shall by law be subject to be committed to prison in default of paying the same, it shall be *competent* for the court to sentence such putative father to the house of correction for such time, not exceeding twelve months, as it may deem proper," with a proviso that the putative father may, if he so elect, bind himself out as an apprentice to some one to get the money. This was held constitutional as early as *State v. Palin,* 63 N. C., 471, which held that the obligation to pay the allowance was not a debt within the constitutional provision abolishing imprisonment for debt, and the Court said (SETTLE, J.), "We must not suppose that it was the intention of the framers of our Constitution to break down the safeguards of society by discharging men from the performance of moral and natural duties." This constitutional construction was referred to, and approved as authority by BYNUM, J., in *State v. Wooding,* 71 N. C., 173, and in *State v. Beasley,* 75 N. C., 212; and it has since been often cited as authoritative. The same principle was stated, without citation, in *State v. Wynne,* 116 N. C., 986, and in *State v. Burton,* 113 N. C., 655, to sustain the constitutionality of sec. 38 of The Code.

Recently, the constitutionality of secs. 38 and 3448, i. e., the power of the Legislature to enact them, was before this Court, in *State v. Nelson,* 119 N. C., 797, (September Term,

1896). The constitutionality of those sections was upheld, and it was said that already the Court had held in *State v. Yandle,* 119 N. C., 874, and in *Myers v. Stafford,* 114 N. C., 234, that "in order to provide for payment of a judgment for fine and costs pronounced against one convicted of crime, the defendant, as incident to such judgment," could be required to work on the public roads, and adds: "But it is insisted that this is not a judgment for fine and costs alone, but also for an allowance, and that a judgment for the imprisonment of the defendant for twelve months on default of paying the fine, costs and allowance under sec. 38 of The Code, is in violation of sec. 27, Art. IV of the Constitution, which fixes the limit to the punishment that a Justice of the Peace may impose. The *question to be decided* therefore is, whether it is competent for the Legislature to authorize a Justice of the Peace, instead of a County Commissioner, to order one convicted of bastardy, and who is unable to pay the fine, costs and allowance, to work upon the public roads, not as a punishment for the offense or as an incarceration for a debt contracted by him, but in the enforcement of a duty or obligation he owes to society to protect the State or the county, one of its governmental sub-divisions, against the consequences of his own conduct." After a full discussion, it is said to be "settled that it is competent for the Legislature, in the exercise of its general police power, to protect the public by permitting either County Commissioners or Justices of the Peace to fix such confinement at hard labor as will enable the defendant to pay a fine due to the State, or costs to its officers, or an allowance made to support a child that, without it, might become a charge to the public"—the identical question which is presented in the present case. But it was held that in that case a sentence of twelve months to pay a fine of $50 and costs, was unreasonably long, and while affirming the

power to impose the judgment to work on the roads, the case was remanded that the sentence be shortened to the time appropriate to earn the amount of fine, costs and allowance with, as the opinion says, "some allowance for contingencies, such as loss of time." The working on the public roads is not a punishment for the crime, but to require the defendant to discharge the duty required of him in labor, if he will not or can not discharge it in money. It is to prevent the public being punished by being made to pay for his default.

The judgment imposed on the defendant in this case of working out fine, costs and allowance "not to exceed six months," in default of payment of the same, is in exact accordance with the provisions of the statute which has been the law since 1866-'67, decided constitutional as far back as *State v. Palin, supra,* in 1869, which has been repeatedly cited with approval since, and the whole subject thoroughly discussed, and the constitutionality of the act reaffirmed by a unanimous Court as late as *State v. Nelson, supra,* at September Term, 1896.

The provision in sec. 2967, which authorized the putative father imprisoned for non-payment of the maintenance, and those in jail for non-payment of fine and costs, to be discharged as insolvent debtors must, by all the rules of construction, be read in connection with secs. 38 and 3448, so that all three may stand, and when so read, those imprisoned for failing to pay allowance or fine and costs can swear out only when the Court has not exercised the authority, given in those statutes of sentencing them for a fixed period which is required to be designated in the judgment, to work on the roads.

The decisions which are cited in opposition to the above will, on careful examination, be found not to conflict with, but to sustain, this view, though, if the head-notes only are read, it might seem otherwise.

In *State v. Davis,* 82 N. C., 610, the defendant was simply "committed for fine and costs." He was not sentenced to the roads under sec. 3448, which expressly requires that to be in the judgment, nor to a definite period as required by sec. 38. He was clearly entitled to be discharged as an insolvent, therefore, under sec. 2967. The Court, however, having declared such insolvent was entitled to his $500 personal property exemption, the next Legislature (Laws 1881, chap. 76), provided the exemption allowed in such cases should be only $50. This latter act was held constitutional in *State v. Williams,* 97 N. C., 414, (since approved in *Fertilizer Co. v. Grubbs,* 114 N. C., 472), in which the Court expressly says the defendant was entitled to be discharged because committed "till fine and costs were paid," with authority to the County Commissioners to work him, but that it would have been valid, if the Judge had, in the sentence, followed sec. 3448, and "fixed a time beyond which" he could not be imprisoned —an express recognition of the validity of that section, and that one so sentenced could not swear out as an insolvent. It is said in that and other cases, that the mere fact that the County Commissioners had established a work-house, would not prevent a prisoner swearing out as an insolvent "when the Court had not fixed the period of his imprisonment," as required by secs. 38 and 3448. Clearly so, for an unlimited imprisonment at work would be as objectionable as unlimited imprisonment in jail.

*State v. Williams* cites *State v. McNeely,* 92 N. C., 829, as authority, in which the judgment was suspended "on payment of costs," and, of course, in the absence of the provision "fixing the term of imprisonment" as required under secs. 38 and 3448, the defendant came under sec. 2967, and was properly allowed to swear out. Exactly the same judgment, without fixing the term of imprisonment, as required to come

under secs. 38 and 3448, was the case of *State v. Bryan,* 83 N. C., 611, and *State v. Giles,* 103 N. C., 396, the latter case calling especial attention to the fact that the sentence was not "for the term of 12 months in the house of correction as *might have been done* under sec. 38 of The Code."

*State v. Burton,* 113 N. C., 655, was exactly like the above in that the defendant was simply committed to jail for non-payment of fine, allowance and costs, "no term of imprisonment being fixed," as required by secs. 38 and 3448. The defendant, consequently, swore out, as he was entitled to do, as an insolvent debtor, under sec. 2967, the only mode left him when the judgment *fixed no period* of imprisonment. He was afterwards re-arrested, and the Judge sentenced him, under the provisions of sec. 38, and it was held that this could not be done, because he had already been committed and discharged legally as an insolvent. The same Judge (AVERY), who wrote the opinion in *State v. Burton,* at the next term, but one in *State v. Parsons,* 115 N. C., at p. 736, cites *State v. Giles,* 103 N. C., 396, and *State v. Burton,* just quoted, as an authority that the Court "might have imprisoned the defendant in the county jail for a definite and reasonable time, and under the express authority of sec. 38 of The Code the defendant might have been sentenced to the work-house for a term not exceeding one year." The same Judge wrote the opinion in *State v. Nelson* and *State v. Yandle,* in 119 N. C., above cited. *State v. Oswalt,* 118 N. C., is exactly like the above, it being expressly said on p. 1216, that, "While the prisoner may be committed to a house of correction or to prison, yet when committed to prison or prayed in custody, *without further action by the Court,*" he can be discharged on taking the insolvent debtor's oath.

A review of the authorities shows, therefore, no conflict that the defendant sentenced, as in this case, under sec. 38, is

validly sentenced, and no case yet has held that he can nullify the senetnce authorized by that section by swearing out under sec. 2967.   What becomes of the validity of the sentence for six or twelve months (*State v. Ballard,* 122 N. C., 1025), if it can only last for twenty days?

In no case hás it yet been held that one imprisoned for a fixed time at hard labor can be discharged from such sentence as an "insolvent debtor."   To do so would be a contradiction in terms.   All the cases have held constitutional the acts authorizing confinement at work upon the public roads for a fixed term, stated in the judgment, to pay fine, costs and allowance, because it is "not as a punishment for the offense, nor as an incarceration for a debt contracted by him, but in the enforcement of a duty or obligation to protect" the taxpayers against paying the penalty due to defendant's bad conduct, and which he should pay with his labor, if he can not or will not pay with his purse.   *State v. Nelson,* and other cases, *supra.*   It is not a punishment, for as he can be discharged upon payment of the sum in default of which he is sentenced to work, his release is at any moment at his command, (*State v. Wynne,* 116 N. C., at p. 986) ; whereas, if it were a "punishment for crime" no amount of money, nor other act of the defendant, would secure his discharge.   Nor is it "imprisonment for debt" within the constitutional provision forbidding such, and this has been long and uniformly held in cases above cited.   From a commitment "for nonpayment of fine and costs" one can be discharged as an "insolvent debtor," but a sentence, as authorized by the statute, to work a fixed period to pay fine and costs, is a valid sentence (*State v. Ballard, supra*), from which he can not swear out, for he can not aver his inability to perform the order of the Court.

The Legislature is the law-making power.   Through it,

the people, in all self-governing communities, exercise their power ot shape their own institutions as they deem best. The power claimed by our courts to set aside legislative acts because the court adjudges them unconstitutional, obtains in this country alone, for it exists not in England and her Colonies, or anywhere else, though constitutional government has been maintained by the English-speaking race for centuries, without any supervision of the legislative power by the courts. If such supervisory power by the courts is not itself unconstitutional (as eminent jurists have always contended) it is admittedly *extra* constitutional, for not a line in any Constitution, State or Federal, confers or intimates the existence of such power in the courts. If unrestricted, it vests all power in the judiciary who, whenever it shall seem good to them, can annul any legislation by the process of simply declaring it unconstitutional. This would reduce the government in its last analysis to a few men—in North Carolina to three men, who constitute a majority of the Supreme Court, and in the Federal Government to the five men who constitute the majority of its Supreme Court. So vast a power, which asserts itself to be above revision or control, is antagonistic to the fundamental principles of our Government, which rests upon the will of the people. The courts themselves have recognized the delicate, not to say dangerous, power claimed by them, and have in recognition of the necessity of its limitation, time and again, declared the courts could pronounce an act of the law-making power unconstitutional only when it conflicted with some express provision of the Constitution, and was unconstitutional beyond a reasonable doubt. *State v. Moore,* 104 N. C., 714; *Sutton v. Phillips,* 116 N. C., 502.

Here, the sentence is in the express terms of sec. 38, and is valid if that section is constitutional. That section is recognized as valid in *State v. Ballard,* (DOUGLAS, J.), 122 N. C.,

1025, February Term, 1898, which cites *State v. Nelson,* *supra,* as authority. The power of the Legislature to pass sec. 38 had been adjudged in *State v. Palin,* 63 N. C., down to *State v. Nelson,* 119 N. C. The statute has been acted on and in force for thrity-three years. Can it now be said that beyond a doubt the act is unconstitutional, and that this Court and its predecessors have been in error? If so, what length of time, what number of adjudications will put any statute beyond liability to be set aside whenever the majority of the Supreme Court shall so will to declare?

Recently, the majority of this Court have adhered to the decision in *Hoke v. Henderson,* though that decision is in conflict with judicial authority in all other jurisdictions. But *Hoke v. Henderson* was in derogation of the right of legislation. It had held an act of the Legislature unconstitutional. To overrule it would not have infringed upon the principle that an act of the Legislature should not be held unconstitutional unless it is so beyond a reasonable doubt. But here we have an act which was passed by the Legislature to voice a public demand that evil-doers work out their costs and fines and charges (if the Judge shall so order) which act is presumably constitutional, and that presumption is supported by the adjudications of the Court for more than thirty years. To now declare it unconstitutional directly, or in effect, is to violate the canon that no law, passed by the General Assembly, shall be deemed unconstitutional, unless it is so beyond reasonable doubt.