O'NEALE (BANK OF THE UNITED STATES v.). See Case No. 932.

## Case No. 10,511.

### O'NEAL v. BROWN.

[1 Cranch, C. C. 69.] [1]

Circuit Court, District of Columbia. March Term, 1802.

EJECTMENT—DISTRICT OF COLUMBIA — CESSION BY MARYLAND—DEED OF TRUST OF ORIGINAL PROPRIETOR—RIGHT OF CESTUI QUE TRUST.

1. In ejectment for a lot in Washington, it is not necessary to show a grant from the state of Maryland. The act of cession by Maryland to the United States transferred to the United States all the right of the state of Maryland to the ungranted land in this part of the District of Columbia.

2. The deed of trust of the original proprietor cannot be set up against the cestui que trust.

3. By Acts Md. 1791, c. 45, § 2. and 1793, c. 58, the legal title vests in the cestui que use.

4. The commissioners were authorized to sell the public lots in Washington in April, 1797.

Ejectment for lot No. 10, in the square No. 78, in the city of Washington. The plaintiff [O'Neal's lessee] proved that in the year 1784, and from that time to the 20th of June, 1791, Benjamin Stoddert and James M. Lingan were and continued in peaceable and undisturbed possession of the land comprehended in the square No. 78, in their own right and claiming to be proprietors thereof in fee-simple. That on the said 20th of June, 1791, they being so in possession, conveyed the said land by deed duly executed to Thomas Beall of Georgetown, and John Mackall Gantt, in trust, among other things, to be laid out with other lands for a federal city, with such streets, squares, parcels, and lots as the president of the United States for the time being should approve; and that the said trustees should convey to the commissioners, for the time being, appointed by virtue of the act of congress [of March 3, 1791 (1 Stat. 214)], for establishing the temporary and permanent seat of the government of the United States, and their

successors for the use of the United States, all the said streets and such of the said squares, parcels, and lots as the president should deem proper for the use of the United States. And as to the residue of the said lots, that a fair and equal division of them should be made, and that such as should be divided or allotted to the said proprietors, should be by the said trustees conveyed to the said proprietors; and that the said other lots should and might be sold at such times, in such manner, and on such terms as the president of the United States for the time being should direct; and that the said trustees should, on the order of the president, convey the lots so sold to the respective purchasers. The plaintiff also produced the order from the president of the United States to the commissioners, dated September 16, 1793, authorizing them to sell any of the last mentioned lots, at such times, in such manner, and on such terms as they should deem proper. The plaintiff also produced the acts of assembly of Maryland, 1791, c. 45, and 1793, c. 58, and the act of congress of the 6th of May, 1796 (1 Stat. 461). He also produced the record of the division of the square No. 78, between the said Stoddert and Lingan, and one Uriah Forrest, as original proprietors on one part, and the commissioners on the other, in which division the lot No. 10 was assigned or allotted to the public, and declared liable to be sold agreeably to the deed of trust. And lastly, he produced the certificate of the commissioners duly recorded, dated April 7th, 1797, in which they certify that the plaintiff's lessor had purchased the lot No. 10, for two hundred dollars, and acknowledged the payment of the whole purchase-money. Upon this title the plaintiff relies.

The defendant [Joel Brown] prayed the court to instruct the jury that the plaintiff has not made out a sufficient title to enable him by law to recover, and relies on two objections: 1st. That the plaintiff has not shown any grant from the lord proprietor, nor from the state of Maryland, nor from the United States. 2d. That the commissioner had no power to sell lots on the 7th of April, 1797; 1st, because the words in the deed of trust, "president of the United States, for the time being," mean the president of the United States at the time of the sale. But at the time of sale, Mr. Adams was president, and the orders produced were given by General Washington, when he was president. And 2d, because whatever powers of sale the commissioners might have had by virtue of those orders, were taken from them by the act of congress of May 6, 1796 (1 Stat. 461), respecting the loan, by which all the public unsold lots were rendered liable to indemnify the United States against their guaranty of that loan.

Mr. Mason, for plaintiff.
Mr. Gantt, for defendant.

[1] [Reported by Hon. William Cranch, Chief Judge.]

THE COURT refused to give the instruction prayed by the defendant, and gave their reasons at length, the purport of which was—That if the land had not been granted by the lord proprietor, nor by the state of Maryland before the act of cession by the state of Maryland and the acceptance by congress, the right of the state passed to the United States by the cession and acceptance. And the sale made under the act of congress of 1796 was the first grant, and therefore good. That if Stoddert, Lingan and Forrest were lawfully seized, in 1784, and conveyed the land in trust, the deed of trust cannot be set up to defeat the title of cestui que trust. That the legislature of Maryland, in 1791 and 1793, had a right to legislate respecting private rights to the property, and were competent to enact in what mode the use of the property, the legal title to which was vested in the trustees, should be declared, and should pass. That when the right of cestui que use accrued the legal title, by virtue of the act of 1793, vested, and followed the use, in a manner analogous to the operation of the English statute of uses. That the question respecting the words "president for the time being," did not arise in the case, because the sale was made under the act of congress, of 1796. The plaintiff was not bound to show the authority given by the president to the commissioners to sell under that act, because it was not to be presumed to be in his power, and was not a matter of record.

These reasons are given from memory, which at this time (Oct. 27, 1805) may not be perfectly accurate.—W. C.