JAMES O. SUTTON v. JOHN R. PHILLIPS.

*Fines and Penalties—Qui Tam Actions—Proceeds—Selling by Unlawful Weights and Measures—Constitutionality of Statute.*

1. The Courts will not declare a Statute unconstitutional unless it plainly and clearly appears that the General Assembly has exceeded its powers. If any doubt exists it will be resolved in favor of the lawful exercise of their powers by the representatives of the people.

2. Former adjudication by the Courts, immemorial usage and considerations of public policy justify the allowance of *qui tam* actions in the absence of clear and express prohibition thereof by the Constitution. (FAIRCLOTH, C. J., and AVERY, J., *dissent.*)

3. Sections 3841 and 3842 of *The Code*, providing that private parties may recover penalties of any person selling and delivering provisions by unauthorized weights and measures, are not in conflict with Sect. 5, Art. 9, of the Constitution, which provides that the net proceeds of all penalties, etc., shall go to the school fund. (FAIRCLOTH, C. J., and AVERY, J., *dissent.*)

4. In an action to recover under Sections 3841 and 3842, providing for a penalty for selling by unauthorized weights and measures, and for selling by other *measures* than the standard, a finding for plaintiff on the second ground is error where the article sold was meat.

Three actions were brought by the plaintiff, James O. Sutton, against John R. Phillips, the defendant, to recover eighty dollars in each case for two penalties of forty dollars

each, given by Sec. 3842 of *The Code*: "for selling and delivering by weights and measures not tried by the Standard, and for selling and delivering by less measures than the Standard" certain meats sold to the plaintiff; tried by a Justice of the Peace. There was no written complaint or answer further than the summons and the Justice's return. The Justice rendered judgment in each case for $40 in favor of plaintiff, and the defendant appealed to the Superior Court from the judgments. When the cases came up for trial in the Superior Court before his Honor, *Judge E. T. Boykin*, the three cases were consolidated by agreement and tried together.

The defendant's counsel moved that the plaintiff be required to elect which penalty he would contend for, the defendant contending that only one penalty for forty dollars was given in said Sec. 3842 for the same transaction.

The Court overruled the motion and the defendant excepted.

After the conclusion of the testimony the following issues were submitted by the Court to the jury:

Did the defendant sell meat to the plaintiff on the—— day of April, 1893, on the——day of May, 1893, and on the ——day of June, 1893, by weights that had not been examined and adjusted by the Standard Keeper as required by the Statute?

Answer—Yes.

Did the defendant sell meat on the dates above named by less measure than the Standard?

Answer—Yes.

On return of the verdict into Court by the jury, the plaintiff moved for judgment thereon against the defendant for $80 in each case.

The defendant moved

1st—That judgment be rendered against the plaintiff for

cost, and the action be dismissed as to the defendant—the defendant contending that the amendment of Sec. 3841 by the Acts of 1893, Chapter 100, repealed the penalty in Sec. 3842, except in case he was called on by the Standard Keeper and refused to allow and permit him to adjust the scales.

It was admitted the defendant had not been called on by the Standard Keeper for that purpose.

In case the Court should be against the defendant on this motion, he moved that judgment be rendered against him for only $40 in each case. After reserving the case for consideration, his Honor overruled both motions of the defendant and rendered judgment against the defendant for $80 in each case, from which the defendant appealed.

*Mr. N. J. Rouse,* for plaintiff.
*Mr. R. O. Burton,* for defendant (appellant).

CLARK, J.: While the Courts have the power, and it is their duty, in proper cases to declare an Act of the Legislature unconstitutional it is a well recognized principle that the Courts will not declare that this co-ordinate branch of the government has exceeded the powers vested in it unless it is plainly and clearly the case. If there is any reasonable doubt it will be resolved in favor of the lawful exercise of their powers by the representatives of the people.

For several reasons it is not clear that the Act in question, which was not only re-enacted since the Constitution of 1875 by *The Code* of 1883 (See 3841, 3842,) but which has been recognized as valid and amended three times by the General Assembly, first in 1889 (Ch. 404) and again by the General Assembly of 1893 (Ch. 100 and 207,) is unconstitutional and invalid. Among these reasons are :

1. This Court has heretofore recognized that acts like this,

giving the penalty prescribed for a violation of the statute, to any one (as to some designated person) who shall sue for the same, are constitutional. ASHE, J., for the Court, in *Katzenstein* v. *Railroad*, 84 N. C., 688, expressly passes upon the point and holds that such acts are not in contravention of Art. IX, Sec. 5, of the Constitution. In *Hodge* v. *Railroads*, 108 N. C., MERRIMON, C. J., elucidates the point and in his concurring opinion on pp. 30, 31, 32 gives strong reasons for adhering to the former opinion of the Court as rendered by ASHE, J. The Constitution of Missouri (Art. XI, Sec. 8) contains a clause almost identical with that of this State and the Supreme Court of that State has uniformly held that it was not an inhibition upon the Legislature to give the penalties to any person whom the act imposing the penalties might provide and that the object of the Constitutional provision was not to prohibit *qui tam* actions in future, but simply to provide that all penalties enuring to the State should go to the school fund. In view of these authorities in our State and elsewhere upholding the constitutionality of such acts which had been customarily passed, time out of mind, it can not be said that this act is plainly and clearly unconstitutional. The doubt, if any, must be resolved in favor of the General Assembly. In addition to these cases directly in point, acts of the Legislature giving the penalty in whole or in part to the person suing for the same, have been recognized as valid in numerous cases since the amended Constitution of 1875, thus in effect approving the direct decisions. *Branch* v. *Railroad*, 77 N. C., 347; *Keeter* v. *Railroad*, 86 N. C., 346; *Whitehead* v. *Railroad*, 87 N. C., 255; *Branch* v. *Railroad*, 88 N. C., 570; *Middleton* v. *Railroad*, 95 N. C., 167; *McGowan* v. *Railroad, Ibid*, 417; *McGwigan* v. *Railroad, Ibid*, 428; *Hines* v. *Railroad, Ibid*, 434; *Williams* v. *Hodges*, 101 N. C., 300; *Cole* v. *Laws*, 104 N.

C., 651; and there are more than twice as many more. All of these were erroneously decided and must be overruled if the plaintiffs in them were now, by a new construction of the Constitution, held not to have had a cause of action, a defect which must have been noticed, in this Court, without exception below, if such defect had existed. Indeed the case of *Katzenstein* v. *Railroad*, in which this Court expressly held that the amendment to the Constitution was not a restriction upon the Legislature prohibiting *qui tam*, or popular actions as they are sometimes termed, has been cited as authority in no less than twelve cases. *Middleton* v. *R. R.*, 95 N. C., 167, citing numerous precedents, not only recognizes the power of the Legislature to authorize the penalty to be given to "any one who shall sue for the same" but that the action can be brought in the name of such party alone without joining the State as relator. This is cited and approved in *Maggett* v. *Roberts*, 108 N. C., 174. The judicial construction of this provision has been uniform and frequently repeated. The Legislative construction has been no less so. In the reply of the Court to the Governor as to the "judicial term" of office, 114 N. C., 922, on page 927, the Court says "We rest our opinion of the construction of the Constitutional provision upon the duty and propriety of adhering to the settled Legislative construction, acquiesced in until a very recent period by the people acting in public and private capacities." By the same reasoning, the construction of this constitutional provision has had ten times over "a settled Legislative construction" which should be adhered to. Scarcely a single Legislature since the Convention of 1875, has passed, which did not recognize the power and duty of the Legislature in this particular by enacting or amending statutes conferring the whole or a part of penalties upon persons suing for the same. This has been acted on without question in that

department of the Government. So universally has it been "acquiesced in by the people in public and private capacities" that only once is it known to have been questioned by the pleadings in all the actions brought to collect penalties, *Katzenstein v. Railroad, supra*, and then by an exceptionally able Court—SMITH, ASHE and RUFFIN—the Legislative construction was unanimously sustained, and has been repeatedly and uniformly recognized since as the law in numerous cases, many of them above cited. It has thus twenty years uniform construction by both the Legislative and judicial departments, and should be deemed settled, if anything can be. The Act of 1889 (Ch. 199, Sec. 36,) requiring solicitors to prosecute and collect penalties and forfeitures applies only to judgments entered incidentally in due course of procedure. It does not extend to those cases where no judgment has been rendered but an action is simply authorized to be brought for a penalty. The words "penalties, forfeitures and fines" in Art. 9, Sec. 5, contemplate primarily only those imposed incidentally in the course of legal procedure but are broad enough to embrace those for which due action must be brought provided the State is empowered to sue for them.

2. From time immemorial in the English law, it has been found that *qui tam* actions, actions in which the penalty goes in whole or in part to the person suing for the same, were an efficient, and indeed sometimes an indispensable means of enforcing the law in many cases, as for the breach or neglect of duty by officers and corporations, and Parliament in England and Legislative bodies in this country have freely enacted statutes for the enforcement of laws by such actions. There has been no agitation for the repeal of such statutes, and if there had been a radical departure intended by the amendment of 1875 by which the General Assembly would have been deprived of its power to authorize *qui tam* actions,

SUTTON *v.* PHILLIPS.

such inhibition would have been clear and unmistakable and would have been placed in the chapter relating to the Legislative department, among the restrictions upon the exercise of Legislative power.   Art. 2, §§ 10, 11, 12 and 14.   Instead of that this provision is found in Article IX, upon Education, and in the section transferring to the school fund certain sources of revenue, and among others is incidentally mentioned "also the clear proceeds of all forfeitures and penalties."   It would be a strange construction that this incidental reference in the article on Education was a reversal of the policy of hundreds of years, and a clear, distinct inhibition upon the Legislature against permitting *qui tam* actions any longer, and an enactment that hereafter the State alone should recover penalties in civil actions.   On the contrary, as already held by our Court and also by the Missouri Court upon an almost identical Constitutional provision, the purport and true meaning of this clause of the Constitution is not to vest the sole right to collect penalties in the State, but to vest in the school fund the clear proceeds of all penalties which by authority of law should be collected for the benefit of the State.   It is best to stand *super vias antiquas.*

3. If the Constitutional provision were clear that the General Assembly was prohibited from any longer permitting *qui tam* actions or the collection of penalties by · any one except the State, public policy could not be considered.   But when such restriction is not clearly shown, considerations of public policy may be invoked on the ground that there was no great recognized evil or public agitation which called for so radical a departure as depriving the law-making power of its immemorial discretion to authorize the recovery of penalties by private persons, as it has done in Section 3842 of *The Code,* or by official persons, as in Section 3844 of *The Code,* as well as in divers

and sundry other statutes. Not only would this restriction upon the Legislature virtually repeal the penalties prescribed for breaches of duty in these and similar cases, but it would virtually repeal all statutes providing penalties for delay in shipping freight, and other penalties for breach of duty by corporations, since penalties will be rarely sued for if there is no benefit to accrue to the party bringing the action. It would indeed be a virtual repeal of this long recognized and efficient mode of enforcing the law, and would leave its enforcement in effect solely to the criminal side of the docket, with its official prosecutors and the benefit to the defendant of the preponderance of challenges, the protection of the doctrine of reasonable doubt and the other advantages with which the law favors a defendant on trial for crime. Such change not being called for by public policy, and such restriction upon the Legislature being against the experience and the public policy of centuries, if made, should appear clearly and unmistakably and not by inference from a mere provision assigning sundry funds for the support of education.

*The Code,* Section 3842, defines (as does section 1090) two distinct violations of the law. The first (in § 3842) for buying, selling or bartering by any weight or measure which has not been stamped or sealed as required by section 3841, and secondly for selling and delivering by less measure than the standard. For each offence a penalty of $40 is prescribed and the same act may be a violation of both provisions or of one only. A party could sell by unstamped measure or weights and violate the first clause and yet not sell by measure less than the standard in which case he would not be liable to the second penalty. In the present case the defendant is not liable to the second penalty but on a different ground which is that the second penalty is restricted to articles sold and delivered by measure less

than the standard (the word "weight" which appears in the
first clause being omitted) and the defendant is not liable
to the second penalty because meat is an article which is
not sold by measure.    An English case under a similar
statute and exactly in point is *Hughes* v. *Humphries*, 3 E.
& B., 954.    If it be objected that the jury has so found,
inspection of the second issue shows that it does not come
up to the statute, which imposes the penalty on any one
who shall "sell and deliver" and the issue and response
thereto does not find that there was any *delivery* which is
an essential to constitute the penalty.    As to the first
clause, we concur with the learned counsel for the defend-
ant that the words "sealed and stamped *as aforesaid*" refer
to section 3841 as amended by Chapter 100, Acts 1893,
and that there is a violation of the statute only when the
defendant has bought, sold or bartered by weights or meas-
ures which he did not "allow and permit" the stand-
ard keeper, who visited him for that purpose, to seal or
stamp.    But the jury find in response to the first issue
that the defendant sold meat to the plaintiff by "weights
that had not been examined and adjusted by the standard
keeper *as required by the statute*."    These words "as
required by the statute" in the verdict have the same ref-
erence to the amended section 3841 as the words "as afore-
said" in the statute, and can only mean that the defendant,
not having complied "as required" with the duty of
" allowing and permitting" his weights and measures to be
stamped and sealed, did sell meat by them.    Upon the
verdict the plaintiff was entitled to recover the forty dollar
penalty in each case upon the offence stated in the first
clause of section 3842, but it was error to render judgment
against him, for reasons above stated, for any penalty in
regard to the second clause of said section.    The costs of

the appeal will be divided between the parties.     Modified and affirmed.

FAIRCLOTH, C. J. ( dissenting ):    I agree that in England the subject of penalties is controlled by the legislative branch of the Government because there is no constitutional restriction.    I agree that in North Carolina, prior to 1868, the subject was entirely under the control of the legislature and that the early statutes on the subject have been allowed to continue on our statute books, by inadvertence I think, as now appears in *The Code*, Section 3842, and others.    After the late war however, when the State was confronted with new conditions, when the subject of general education and a general system of public instruction became an important question of State policy, the Convention of 1868–9 adopted a Constitution with a provision ( Art. IX, Sec. 4 ) which declared that " The net proceeds that may accrue to the State from sales of estrays or from fines, penalties and forfeitures shall be sacredly preserved as a school fund and for no other purposes whatsoever."  Again, the Constitutional Convention of 1875, amending the State Constitution in several respects, after providing for a general and uniform system of public schools, and setting apart the sources of means for maintaining the same, declared in Art. IX, Sec. 5, " That all monies, also the net proceeds from the sales of estrays, also the clear proceeds of all penalties and forfeitures, and of all fines collected in the several Counties for any breach of the penal or military laws of the State, shall belong to and remain in the several Counties, and shall be faithfully appropriated for establishing and maintaining free public schools in the several Counties of the State.    Provided that the amount collected in each County shall be annually reported to the Superintendent of Public Instruction."

Again, the legislature, 1881, Ch. 200, Sec. 16, enacted in

the identical words of the Constitution of 1875, that the " Net proceeds from sales of estrays, also the clear proceeds of all penalties and forfeitures, and of all fines &c " shall belong to and remain in the several counties and shall be faithfully appropriated for establishing and maintaining free public schools in the several Counties as established in pursuance of the Constitution : Provided the amount collected in each County shall be reported annually to the State Superintendent of Public Instruction," which statute was re-enacted into *The Code* in 1883. *Code*, Section 2544.

Thus we have, on the one hand, the Constitutional provisions of 1868 and 1875 and the Act of Assembly, 1881, Ch. 200, Sec. 14, *Code*, Sec. 2544, declaring in plain terms that the clear and net (synonymous terms) proceeds of fines, forfeitures, penalties, &c., shall be faithfully applied to maintain public schools, and, on the other hand, the Act of 1741, Secs. 4, 5, *Code*, Sec. 3842, giving the entire penalty to any person suing therefor, and so for other penalties, and the question is, which shall control. The Constitution does not impose penalties but only directs the application of the net proceeds thereof when collected. It leaves with the legislature the power to impose penalties, to provide the machinery for collecting them, the designation of suitable persons to collect them and the right to make reasonable compensation to the collectors for services and expenses. The State has made the County Board of Education a corporate body, with power to sue and be sued, to recover school property, real and personal, and to see that the school law is enforced. I should regret to know that the State is compelled to appeal to the selfish motives of common informers to have its laws enforced, and would prefer that it, the State, would select its own suitable agents to perform this labor with reasonable compensation, and I see no reason why the County Board of Education in

a case like the present, may not make the collection and place the net proceeds to the school fund, and so on with other penalties, &c. For illustration—The Act of 1889, Ch. 199, Sec. 36, requires the solicitors of the several judicial districts to prosecute all penalties and forfeited recognizances entered in their respective courts and collect by execution if necessary, and allows them to receive as compensation for their services, a sum to be fixed by the court not less than five per cent. on the amount collected, and this Act is amendatory of *The Code*, Sec. 2544, requiring the net collection to be applied to the school fund as above stated. Will it be suggested that the solicitors, County Boards of Education and such others as the legislature has or may designate as collectors of all penalties, are not patriotic enough to perform their sworn duties in this behalf with reasonable compensation? By this method the school fund is increased, but if any person who may choose to sue is allowed to recover the whole penalty to his own use as is attempted in this case, then the school fund suffers and the Constitution, Art. IX, Sec. 5, is a "dead letter." It is seldom that we find an express and positive restraint upon Legislative power in the Constitution, but when we see a positive direction therein, it carries with it a necessary implication against every thing contrary to it, which would frustrate or disappoint the purpose of that provision.

I must assume that these constitutional provisions and the Act of 1881, Ch. 200, were enacted after due deliberation and not incidentally or by mere accident.

In two cases this question has been discussed by this Court, First *Katzenstein* v. *Railroad*, 84, N. C., 688. In that case the Court took a middle ground, by distinguishing between those penalties with an express provision that any person could sue and recover to his own use and those without any such provision, holding that the latter only

belonged to the school fund. I respectfully submit that this was a *petitio principii*, as the Constitution says "All penalties" &c, which must include all or none, subject to the deduction which the Legislature may deem a *reasonable* allowance for services and expenses of collection.

Second, *Hodge* v. *Railroad*, 108 N. C., 24: In this case the same question was discussed by a divided Court but it was left as an open question as it was not necessary to decide it in that case.

With the highest regard for the decisions of the Court as constituted when Katzenstein's case, *supra*, was decided, and knowing that it is important that the law should be fixed and steady, still I feel that the organic law must be preserved according to its true intent and that the law should be "reasonable and right"— that it can not be settled until it is settled right and that if an error is committed by this Court it should be corrected, and the sooner the better, before it is followed by a list of decided cases, spreading in so many ways that to eradicate the error would do more harm than good.

I am of opinion that the judgment below should be reversed and the action as now constituted dismissed.

AVERY, J., also *dissents*.