E. McDONALD v. J. M. MORROW, Clerk.

*Election   Law — Constitutional   Law — Jurisdiction   of
Justices of Supreme Court—Supervising Superior Court
Clerks—Declaring Result of Election—Duties of Clerk.*

1. Sec. 7 of Chap. 159, Acts of 1895 (Election Law), conferring on the
    judges of the Supreme and superior courts general super-
    visory jurisdiction over clerks of the superior court in the
    performance of their duties under such law, with power to
    issue rules on such clerks, and on the hearing thereof to
    make summary orders and directions for the proper enforce-
    ment of the law, is not in conflict with the Constitution, and
    is valid. (AVERY, J., dissents, *arguendo*). ·

2. The duties of a clerk of the superior court under the Election
    Laws of 1895, in tabulating the result of the election and
    declaring the result, are ministerial; and it is his duty to
    count all returns received through the regular channels
    unless it appears on their face that they are not in fact the
    returns from the precincts as they purport to be, in which
    case he should not count them until directed by a judge of
    the Supreme or superior court.

This was a proceeding under Section 7 of Chapter 159,
Acts of 1895, to restrain the defendant Clerk of the
Superior Court of Mecklenburg County from tabulating
and counting the election returns from Pineville Township,
Precinct No. 2, on the ground of alleged irregularities,
intimidation, etc., heard before Hon. D. M. FURCHES, one
of the judges of the Supreme Court.

His Honor, in rendering his judgment, filed the
following opinion :

" Upon a full consideration of this matter, I am of the
opinion that the restraining order heretofore granted
should be vacated and the motion for an injunction should
be denied.    But, in thus holding, I do not find that there
had been no irregularities, intimidations or frauds com-
mitted on the election in Precinct No. 2, Pineville

Township.   It is not necessary that I should undertake to decide these questions, nor do I think that I have the power to do so in this proceeding.   My opinion is that registrars and judges of election should be residents of the precinct for which they are appointed.   But when they are regularly appointed the law  presumes they are rightfully  appointed  and  that  they  are  residents of  the precincts for which they have been so appointed.   If they are not, the law provides the means by which this may be legally tried and *judicially determined.*

No  citizen  or  voter has theright to take the matter in his own hands, and by fraud, violence, intimidations or other  unlawful means attempt to correct such mistake, if one has been made.   If this were allowed, free elections and free governments would soon be at an end.

No citizen  has the  right  to undertake to  correct such mistake,  if  one  has  been  made,  by officiously running the township lines " and filing his report with the board," acting in discharge  of their duties as registrars or judges of election.

And if any person, by such acts or by threats of violence, or  threats of indictment  or  other  unlawful means, did intimidate said registrars or judges, and by such means did interfere with them in the lawful discharge of  their duty as such registrars or  judges, they have violated both the criminal  and  civil law of the State, and in  my opinion neither the State nor the  individuals who may have been injured  thereby are without  remedy.   But it is not in this proceeding.

I am in full sympathy with what I understand to be the spirit and meaning of the election law of 1895—a free and fair election and fair and honest count.   And while I would not consider it my duty to sustain every technical objection that might be made to the manner of executing

McDONALD *v.* MORROW.

this law, if I saw that substantial justice had been done and a fair expression of the qualified voters had been obtained I would feel it my duty to exert all the powers I have to prevent fraud and intimidations of any kind. But it seems to me, from the affidavits filed in this proceeding, that this trouble has probably arisen from the fact that two negroes were appointed registrars in this township. And while it is not for me to say whether they should have been appointed or not, (and I do not say whether they should or should not have been appointed), I do say that under the Constitution and laws of this State the negro is a legal elector and is entitled to accept and hold the office of judge or registrar of elections and to exercise and perform the duties appertaining to the same; and the time has passed (if it ever existed) in North Carolina when he can be illegally interfered with and prevented from discharging his duties as such officer on that account. But it is my opinion that the duties of a clerk, in tabulating the vote of an election and in announcing the result, are ministerial duties, and that it is his duty to tabulate and compute all such votes as come to him through the regular channel prescribed by law, unless it shall appear upon the return itself that it is in fact not the return of said precinct for which it purports to be. In such case he should refuse to count it unless he shall be directed to do so by an order of a judge of the superior or Supreme Court. Upon an examination of a certified copy (not objected to by the plaintiff) of the return of the election in this precinct to the defendant, I cannot say that it contains such inherent and patent defects as would have authorized the clerk to reject it under the rule I have stated; and this being so it was his duty to tabulate and count the same.

Therefore the restraining order heretofore granted in

this case is vacated and the motion for a permanent
injunction is denied.    The defendant, J. M. Morrow,
will at once proceed to count said vote as the law directs,
and the same as if no restraining order had been issued in
this proceeding.    The defendant will recover his costs of
the plaintiff McDonald.    This November 9, 1896.

(Signed)          D. M. FURCHES,

*Associate Justice of Supreme Court, N. C.*

From this judgment plaintiff appealed to the full bench.

*Mr. W. R. Henry*, for plaintiff (appellant).

*Messrs. Burwell, Walker & Cansler*, and *Clarkson &
Duls*, for defendant.

Furches, J. : This is an appeal by plaintiff from the
rulings, findings and judgment of Furches, J., in a pro-
ceeding instituted before him under Chapter 159 of the
Acts of 1895, known as the " Election  Law."    And upon
consideration of the case on appeal the Court, without any
division, are of the opinion that the rulings and opinion of
the court below are correct and should be affirmed, if the
court had the jurisdictional power to entertain and decide
the matter.    This being so, we adopt the opinion of the
court below as the opinion of this Court, for the discussion
of the matters of fact and law involved, except as to a
constitutional question raised on the argument by a mem-
ber of the Court.

There is no question but that the act, in plain and
unmistakable terms, authorized any judge of the superior
court or justice of the Supreme Court to do what was done
by one of the justices of the Supreme Court in this pro-
ceeding.    This is admitted.

But it is contended that this act is unconstitutional and
void ; if not void *in toto*, that it is at least unconstitutional

and void so far as it relates to the justices of the Supreme Court. And as we understand, Art. 4, Sections 2, 8, 11 and 12 are relied on as sustaining the contention that it is unconstitutional; that the Legislature had no power to pass the act giving to judges and justices of the Supreme Court any such jurisdiction, and the act, or that part of it, is void for this reason.

Congress legislates by virtue of the powers granted in the Constitution of the United States, and cannot or should not legislate outside of these granted powers. But the powers of the Legislature of North Carolina are just the reverse of the powers of Congress. The powers of the Legislature are inherent, being derived from the people whom it represents, and it has the power to pass any proper act of legislation that it is not *prohibited* from passing by the Constitution. It then necessarily follows that, unless the Legislature is *prohibited* by the Constitution from passing this act, it had the power to do so.

Art. 4, Sec. 2, of the Constitution of North Carolina is as follows: " The judicial power of the State shall be vested in a court for the trial of impeachments, a Supreme Court, superior courts, courts of justices of the peace, and such other courts inferior to the Supreme Court as may be established by law."

Article 4, Section 8, provides that the Supreme Court shall have jurisdiction to review upon appeal any decision of the courts below. And the jurisdiction of said court over issues of fact and questions of fact shall be the same they were before the Constitution of 1868. And it shall have power to issue any remedial writs necessary to give it a general supervision and control over the proceedings of the inferior courts.

The eleventh section provides that the judges of the superior courts shall reside in the districts for which they

McDONALD *v.* MORROW.

are elected, and shall preside in the courts of the different districts, etc., without prescribing any duty they are to perform.

The twelfth section provides "the General Assembly shall have no power to deprive the *Judicial Department* of any power or jurisdiction which rightfully pertains to it, as a co-ordinate department of the Government; but the General Assembly shall allot and distribute that portion of this power and jurisdiction, which does not pertain to the Supreme Court, among the other courts prescribed in this Constitution, or which may be established by law, in such manner as it may deem best; provide also a proper system of appeals; and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with other provisions of this Constitution."

These are the provisions of the Constitution relied on, as we understand, to maintain the contention that this act is unconstitutional. We must confess our inability to see it.

The second section certainly does not do so. It refers to the whole judicial power, as a co-ordinate department of the Government, and in doing so it refers to the courts mentioned in the Constitution, and such other courts inferior to the Supreme Court as may be established by law. But it does not undertake to distribute this power among the courts. There is no prohibition in this section. The eighth section establishes the *Supreme Court* as a court of appeals. It does not in *terms* prohibit it from exercising other jurisdiction. But it has been so construed, and we do not wish to question this construction. But the Constitution is speaking of it as an *organized court*. It cannot be speaking of the individual members of the Court,

as they possess no appellate jurisdiction. A single member of the Supreme Court has no more right to hear and determine a case on appeal to the Supreme Court than a justice of the peace would have. It is therefore manifest to our minds that this section of the Constitution, when it speaks of the jurisdiction of the Supreme Court, means the *Supreme Court* and not a single member of the Court. Thus understanding this section, we find nothing in it to *prohibit* the Legislature from giving this jurisdiction to a single member of the Supreme Court "as a court established by law inferior to the Supreme Court," as provided for in the 12th Section of Article 4 of the Constitution. And why not give a single member of the Supreme Court jurisdiction of this matter, as well as to give him jurisdiction to issue writs of *habeas corpus* to issue warrants for persons charged with crime, to discharge persons on bail, as judges of the superior court may do, to take probate of deeds and the private examination of married women? *Code*, Sec. 949. There is no appellate jurisdiction in this, and yet it is being done every day, and has been for a hundred years. We have an unbroken line of authorities where members of this Court have issued writs of *habeas corpus*, as in *Prue* v. *Hight*, 6 Jones, 265, where Pearson, C. J., issued the writ, and by request Ruffin & Battle sat with him on the hearing and concurred in the judgment. In the matter of *Bryant*, 60 N. C., 1; in the matter of *Guyer*, 60 N. C., 66; in the matter of *Grantham*, 60 N. C., 73; in the matter of *Dollahit*, 60 N. C., 74; in the matter of *Ritter*, 60 N. C., 76, and many other cases which might be added.

As we have seen that this matter does not fall within that provision of Section 8, Article 4, constituting the *Supreme Court* a court of appeals, there is just the same reason for declaring it unconstitutional to give it to a judge

McDONALD v. MORROW.

of the Superior Court as there is in giving it to a single member of the Supreme Court, as there is nothing in the Constitution that assigns it to them, and they have no power to act in the matter except the authority given by this legislation.   And if it cannot be given to a justice of the Supreme Court, or to a judge of the superior court, to whom can it be given?

Is it true that we are living in a popular government, depending upon free and fair elections, and have a Constitution that prohibits the Legislature from authorizing a judge or a justice of the Supreme Court to investigate alleged irregularities of the election officers?   If this were so, elections would become a farce and free government a failure.   But fortunately for the people and the government, in our opinion, this is not true, and fair and honest elections are to prevail in this State.

The Legislature, as has been already stated, has given justices of the Supreme Court the right to take the acknowledgment of deeds and the private examination of married women.   This Court has decided that these are judicial acts.    *White* v. *Connelly*, 105 N. C., 65 ; *Turner* v. *Connelly*, Ibid., 72.   If it is unconstitutional to authorize justices of the Supreme Court to investigate the regularity of election officers, why is it not unconstitutional to take acknowledgments of deeds and private examinations of married women?

But it is said they are not litigated.   And, if this is so, what has that to do with the investment and exercise of a judicial power?   But if the judicial acts of taking the acknowledgment of deeds and private acknowledgment of married women are not litigated judicial matters, and this makes any difference (and we fail to see that it does), how is it with regard to writs of *habeas corpus?*   They are almost always litigated.   Within the last two years

119—43

this Court has had two cases that we remember—both claims to infant children, and both hotly litigated. *Latham* v. *Ellis*, 116 N. C., 30 ; in the matter of D'Anna, 117 N. C., 462.

It has been the uniform rule of this Court, so far as we remember, to sustain the constitutionality of the Legislature to pass any act unless *it plainly* appears to be in violation of the Constitution. The 4th Section of Art. 9, of the Constitution provides that " the net proceeds that may accrue to the State from sales of estrays, or from fines, penalties and forfeitures, shall be sacredly preserved as a school fund, and for no other purpose whatsoever."

Section 3841 of *The Code* gives one-half of the recovery to the standard keeper, and Section 3842 gives the whole recovery to the party suing for the penalty. And this Court, in *Sutton* v. *Phillips*, 116 N. C., 502, sustained these sections and held them to be constitutional. CLARK, J., in delivering the opinion of the court in *Sutton* v. *Phillips*, uses this language ; " While the courts have the power, and it is their duty in a proper case, to declare an act of the Legislature unconstitutional, it is a well-recognized principle that the Court will not declare that this co-ordinate branch of the Government has exceeded the powers vested in it unless it is plainly and clearly the case. If there is any reasonable doubt, it will be resolved in favor of the lawful exercise of them by the representatives of the people."

Section 27 of Article 4 of the Constitution expressly limits the jurisdiction of justices of the peace in civil actions to $200 on contract and $50 when not on contract ; and in criminal cases where the fine cannot exceed $50 or imprisonment for thirty days. But in a case where a justice had sentenced a defendant in a bastardy proceeding, which has been held by this Court to be

McDonald v. Morrow.

a criminal offence (*State* v. *Wynne*, 116 N. C., 981 ; *State* v. *Ostwalt*, 118 N. C., 1208), and sent the defendant to the workhouse for a term of twelve months to work out the fine costs and allowance to the mother, this Court (Avery, J., delivering the opinion) held this judgment of the justice of the peace to be constitutional. *State* v. *Nelson*, at this Term.

Then, taking it to be settled law in this State that it must *plainly appear* that the act is in violation of the Constitution or its constitutionality will be sustained, we deem it not improper to state that this is the fourth case that has been before the Court at this Term demanding a construction of this statute (the election law of 1895); that these cases have been argued for the defendants by such gentlemen of the bar as E. B. Jones, of Winston ; T. F. Davidson, of Asheville ; Walker, Duls and Maxwell, of Charlotte ; J. S. Manning, of Durham, and James E. Shepherd, of Raleigh. And it never occurred to either of these gentlemen that this act is unconstitutional. We say it never occurred to them because they never made or discussed any such question before us ; and we are satisfied that, had it occurred to them, they would, in the interest of their clients, have done so. We do not mention this fact for the purpose of contending that, because they did not make the point, the Court should not consider the question and decide it to be unconstitutional if it clearly *appeared* to be so ; but as a reason why it cannot *plainly appear* to be unconstitutional, as the watchful, vigilant, trained legal eye of some, and most likely of all of them, would have discovered this fatal infirmity in the plaintiff's case. They are not the gentlemen to allow such legal questions to lie around them in *plain view* without seeing them. The mistake the gentlemen make who contend that this act is unconstitutional is that they fail to distinguish the

difference between a single justice of the Supreme Court and the *Supreme Court as an organized body.* We have in this opinion marked the line of distinction which in our opinion relieves this act of the charge of being unconstitutional. The Constitution and the Legislature are dealing with the *Supreme Court as an appellate court*, and the justices as individual members of the Court.

The jurisdiction of the Court being determined, it is suggested that the act of 1895 is unconstitutional in that it authorizes the taking of the office of judge of election from one person and the giving of it to another. And the leading case of *Hoke* v. *Henderson*, 4 Dev., 1, is cited as authority for this position.

Without entering into an extended discussion of this question it is sufficient to say that the doctrine enunciated in *Hoke* v. *Henderson* does not apply to this case or that of *Harkins* v. *Cathey* at this Term. In that case Henderson was appointed clerk, when the law at the time of his appointment gave it to him for life or during good behavior. In 1832, and while Henderson was still in possession of this office, the Legislature passed an act giving the election to the people, and under this law Hoke was elected. Henderson refused to vacate and Hoke brought suit for the office, and the Court held that the defendant was entitled to hold the office.

This decision is put on the ground that as the law stood at the time Henderson went in he had a life tenure—a property in the office—which could not be taken from him by subsequent legislation. But in th case of *Harkins* v. *Cathey*, *supra*, the parties wrongfully appointed by the clerk Cathey took whatever they had under the act of 1895 and subject to its provisions, one of which was that the Court had the right to supervise the appointments of the clerk.

PARKER v. RAILROAD COMPANY.

This being the case, this provision of the statute entered into and became a part of the contract or terms· under which they accepted these offices to the same extent as if it had been an express stipulation between the parties. *McCless* v. *Meekins*, 117 N. C., 34, and authorities there cited. This distinguishes it from *Hoke* v. *Henderson.*

So, after a full investigation of this important question, we are led to a satisfactory conclusion that the act is constitutional and that the judgment should be affirmed.

Affirmed.

AVERY, J. (dissenting): Under the rule recently adopted by the Court, a justice is required to file dissenting opinions before the adjournment of the Court, and as my engagements have left me only a few hours before the last meeting for consultation, I wish that the opinion filed within that limit in *Harkins* v. *Cathey* be considered in so far as it is applicable as expressing the reasons for my dissent in this case.