BOARD OF EDUCATION of Vance County *et al. v.* TOWN OF HEN-
DERSON *et al.* (Both sides appealed.)

(Decided May 29, 1900.)

*Free School Fund—Fines and Penalties—Constitution, Art.
IX, Section 5—Act 1899, Chapter 128—Violation of
Town Ordinances Misdemeanors—The Code, Sections
3818, 3820.*

1. A fine is the sentence pronounced by the court for a violation of
the criminal law of the State.

2. A penalty is the amount prescribed for a violation of the statute
law of the State or the ordinance of a town, and is recoverable
in a civil action of debt.

3. The Constitution, Art. IX, section 5, appropriates all fines for vio-
lation of the criminal laws of the State for establishing
and maintaining free public schools in the several coun-
ties—whether the fines are for violation of town ordinances,
made misdemeanors by sec. 3820 of The Code, or other crimi-
nal statutes.

4. Where such fines are collected through the Mayor of a town, by
virtue of his authority as Justice of the Peace, they are to be
accounted for to the Board of Education. It is otherwise as
to penalties imposed for violation of town ordinances, which
are to be sued for.

5. The Act of 1899, chap. 128, which attempts to divert from the
school fund the fines collected by the defendant cannot be
supported.

CIVIL ACTION to recover fines, forfeitures and penalties for
violation of State laws and town ordinances, collected by the
authorities of the town of Henderson, for the use of the free
public schools of Vance County, tried before *Moore, J.,* at
April Term, 1899, of VANCE Superior Court, upon exceptions
to report of referee, who reported $407.90 as the sum due the
plaintiff.

44——126

Both parties filed exceptions, which were overruled—the report confirmed—and judgment rendered accordingly in favor of plaintiff for $407.90, from which judgment both sides appealed.

The facts and exceptions appear in the opinions.

FURCHES, J., writes the opinion of the Court.

FAIRCLOTH, C. J., writes concurring opinion in result.

DOUGLAS, J., writes concurring opinion in the opinion as well as the judgment of the Court.

*Mr. T. T. Hicks,* for plaintiff.

*Messrs. J. H. Bridgers,* and *A. C. Zollicoffer,* for defendant.

FURCHES, J.   The plaintiff Board of Education of Vance County alleges that defendant town of Henderson has collected, and now has in its treasury, a large amount of money collected from fines and penalties belonging to the public school fund of said county, which defendant refuses to account for and pay over to plaintiff.

The defendant answers and denies that it owes plaintiff anything—denies that it has collected any fines and penalties that belong to the plaintiff—pleads the statute of limitations, and also pleads an Act of the Legislature (Laws 1899, chap. 28), in bar of plaintiff's right to maintain this action.

A reference was had, an account taken and reported, finding $407.90 in favor of plaintiff.   This account and report are excepted to by both parties; and the amount reported may be changed, upon considering these exceptions, if it be found that plaintiff is entitled to recover anything.   But whether the amount found by the referee be correct or not, the evidence taken by the referee shows that defendant had collected a large amount of fines and penalties, for which it had not

accounted to plaintiff, upon the ground (as defendant alleges) that it is not liable to plaintiff for any part thereof.

To our minds there is a clear distinction between a fine and a penalty. A "fine" is the sentence pronounced by the Court for a violation of the criminal law of the State; while a "penalty" is the amount recovered—the penalty prescribed for a violation of the statute law of the State or the ordinance of a town. This penalty is recovered in a civil action of debt. *Commissioners of Louisburg v. Harris,* 52 N. C., 281; *State v. Earnhart,* 107 N. C., 789. A municipal corporation has the right, by means of its corporate legislation, commonly called town ordinances, to create offenses, and fix penalties for the violation of its ordinances, and may enforce these penalties by civil action; but it has no right to create criminal offenses. And this being so, it was found to be almost impossible to administer and enforce a proper police government in towns and cities by means of penalties alone. It therefore became necessary to make the violation of town ordinances a misdemeanor—a criminal offense—which was done by sec. 3820 of The Code, and to invest mayors with the criminal jurisdiction of Justices of the Peace, which was done by sec. 3818, of The Code. This being so, in order that the mayor may have jurisdiction, the town legislature (the Board of Aldermen) pass ordinances or by-laws for the government of towns and fix penalties for their violation, not to exceed a fine of $50 or imprisonment for a term not exceeding thirty days. And while the town or city government has no right to make criminal law, the Legislature has made the violation of such ordinance a criminal offense, and has given to mayors jurisdiction to try such offenses. *State v. Higgs,* at this term.

While such violations of town ordinances are criminal offenses, they are made so by a general act of the Legislature,

3820, of The Code; and while the mayors of cities and towns have jurisdiction under sec. 3818, of The Code, any Justice of the Peace also has jurisdiction of such offenses. *State v. Wood,* 94 N. C., 855; *State v. Higgs, supra.* But whether the criminal offenses created by the violation of town ordinances (under sec. 3820, of The Code), are tried before the mayor, or before a Justice of the Peace, they are State prosecutions, in the name of the State, or for violations of the criminal law of the State, and at the expense of the State (*State v. Higgs, supra*), and the city can not be charged with the costs of such prosecutions.

Article IX, sec. 5, of the Constitution, among other things, provides: "Also the clear proceeds of all penalties and forfeitures, and of all fines collected in the several counties for any breach of the penal or military laws of the State;    *    *    shall belong to and remain in the several counties, and shall be faithfully appropriated for establishing and maintaining free public schools in the several counties of the State."

It must therefore follow that all the fines the defendant has collected upon prosecutions for violations of the *criminal laws* of the State, whether for violation of *its ordinances* made criminal by sec. 3820, of The Code, or by other criminal statutes, such fines belong to the common school fund of the county. It is thus appropriated by the Constitution, and it can not be diverted or withheld from this fund without violating the Constitution. This is not so with regard to "penalties" which the defendant may have sued for and collected out of offenders violating its ordinances. These are not penalties collected for the *violation of a law of the State,* but of a town ordinance. But wherever there was a fine imposed in a State prosecution for a misdemeanor under sec. 3820, of The Code, it belongs to the school fund, and, as we have said, must go to that fund.

But it is contended by defendant that if this is so, it is protected by the Act of 1899, chap. 128. This is an Act to amend sec. 3806, of The Code, by making it read that "said fines and penalties shall be paid into the treasuries of said towns for municipal purposes;" and sec. 2, of said Act, provides, "That no action shall be brought or maintained against any town for the recovery of any fines and penalties heretofore collected, and this act shall apply to existing actions."

The provisions of the first section of this act that "said fines and penalties shall be paid into the treasury of said town for municipal purposes," is so palpably in conflict with Art. IX, sec. 5, of the Constitution, which says that all moneys so collected "shall belong to and remain in the several counties, and shall be faithfully appropriated for establishing and maintaining free public schools in the several counties of the State," that we feel unwilling to discuss its unconstitutionality. We can not think it needs more than a comparison of the provisions of the statute with the provisions of the Constitution to show the repugnancy of the statute to the provisions of the Constitution.

The second section of the Act of 1899: "That no action shall be brought or maintained against any town for the recovery of any *fine or penalty* heretofore collected, and this act shall apply to existing actions"—is equally unconstitutional, though it may not be so palpable as that of the first section.

It will be seen that the Act of 1899 does not undertake to "abolish" the school board of education. It is probable that it could not have done so, as the common schools are creatures of the Constitution, and while its machinery—its agency—may be changed and regulated by legislation, it can not be abolished by legislation. It does not undertake to take from this Board the general right to sue and be sued, but to prohibit it *from suing for this money*.

So we have this condition: The defendant has (we will say) $407.90 of *plaintiff's money*. This, we will say, is admitted, but defendant says it will not pay it to the plaintiff, and the argument of the defendant is that the Legislature says to the defendant, "hold on to plaintiff's money, you need it more than the poor common school children do, and we (the Legislature) will not let the plaintiff sue you." Can it be that the Legislature can in this indirect way destroy the plaintiff's constitutional right? The defendant having received money that belongs to the plaintiff, the law presumes that it received it for the plaintiff upon an implied contract, and is liable to be sued for it upon this implied contract, in what would have been an action of *indebitatus assumpsit* before The Code. *Robertson v. Dunn,* 87 N. C., 191; *Hauser v. McGinnis,* 108 N. C., 631; *Draughan v. Bunting,* 31 N. C., 10. To say that to prohibit the plaintiff from suing the defendant for what it owes the plaintiff, is not to impair the obligation of a contract and not in violation of the Constitution, would be to close our minds to all reason, and to disregard all precedent.

It has been frequently held by this Court that a general act staying for a period of time a plaintiff's right to collect his debts, was a violation of both the State and Federal Constitution. *Jones v. Crittenden,* 4 N. C., 55; *Barnes v. Barnes,* 53 N. C., 366. If such general legislation as that is in violation of both State and Federal Constitutions, how can it be that an act which perpetually enjoins the plaintiff from suing the *defendant* for a debt—money of plaintiff it has collected —can be constitutional?

It was said that this Court has held that penalties recovered by parties suing for them might be given to the party suing; and *Sutton v. Phillips,* 116 N. C., 502, and many other cases before and since that decision, to the same effect, are cited.

Those cases are to our minds distinguishable from this. Besides, the fact that they were put upon the ground of public good—to protect the public from flagrant violations of the law, such as public carriers, and that while these were inducements for making the decisions, we admit that even these reasons would not have justified the Court in violating the Constitution.

The Constitution provides that the "clear proceeds of all penalties" shall go to the school fund. It was held that there were no "proceeds" until there was a suit and a recovery; and if it took all the penalty to enforce the collection, there were no "clear proceeds" left to go into the school fund. This may not be very satisfactory reasoning to some, as we know it was not in *Sutton v. Phillips, supra,* where both the Chief Justice and Justice AVERY dissented. But it was held to be the law in that case as it had been in other cases before and since. But in this case there is no grounds for such reasoning. Here, the money has been collected from *fines* imposed for the violation of the criminal law of the State, upon prosecutions by the State, and at the cost of the State. This to our minds makes a clear distinction between this case and *Sutton v. Phillips, supra, Carter v. Railroad,* at this term, and other cases where an individual was induced to incur the expense, and take the risk of paying costs by being allowed whatever he might recover in such actions. Here, there was no one individual to sue for a penalty; no one taking upon himself the expense of prosecuting an action, and the risk of costs. This money was all collected at the cost and expense of the State.

But whether the distinction we have attempted to draw between this case and *Sutton v. Phillips* and that line of cases, is sustained or not, does not materially affect the case at bar. Those cases were actions for penalties where the "clear pro-

ceeds" are given to the school fund, and this is an action for *fines collected*. Mark the difference in the language of the Constitution: with regard to penalties, it says, the "clear proceeds;" while it says "all fines collected in any county" shall belong to the common school fund, and there is no ground for deducting anything from it.

We do not think that the statute of limitations interferes with the plaintiff's right to recover.

We do not go into a discussion of the exceptions to the account, further than to say that it does not appear to be unfavorable to the defendant. And as the judgment seems to have been based upon correct principles of law, the same is affirmed.

This opinion disposes of the substantial exceptions in the plaintiff's appeal.

Affirmed.

FAIRCLOTH, C. J., concurring in result: I fully concur in the conclusion in this case, but I can not assent to the argument which attempts to distinguish *Sutton v. Phillips,* 116 N. C., 502, from the present case. With entire respect, it appears to me that the argument is unsound and illogical, and I think the principle now and here decided *necessarily* overrules the decision in *Sutton v. Phillips*.

The question depends on the meaning of Art. IX, sec. 5, of the Constitution—"All moneys, stocks, bonds, and other property belonging to a county school fund; also the net proceeds from the sale of estrays; also the clear proceeds of all penalties and forfeitures, and of all fines collected in the several counties for any breach of the penal or military laws of the State; and all moneys which shall be paid by persons as an equivalent for exemption from military duty, shall belong to and remain in the several counties, and shall be

faithfully appropriated for establishing and maintaining free public schools in the several counties of this State."

Now it is held that the Legislature can not divert the fines from the school fund and give them to the defendant or any-one else, as it attempted to do in the Act of 1899, chap. 128, because the Constitution appropriates fines to the public schools, and yet it was held in *Sutton v. Phillips, supra,* that the Legislature, under a different statute, could divert the penalties mentioned in said Art. IX from the school fund and give them to a common informer, a municipal corpora-tion or any other at its pleasure! Is that a reasonable and legal construction of sec. 5, Art. IX? Look at the language itself and the context of the several parts—"also the clear proceeds of all penalties and forfeitures, and of all fines collected," etc. Is not the natural rendering of those words this? Also the *clear proceeds* of all penalties and the *clear proceeds* of forfeitures, and the *clear proceeds* of all fines collected, etc. If this is not the way of it, what is the use of the word "of" immediately before "all fines," and what duty does "of" perform? We must hold that every word in the Constitution has a meaning and proper position. If this is the proper construction of the language, then the whole theory of *Sutton v. Phillips* falls to the ground, according to the decision in the case now before us.

But it is said that *penalties* are collected in "civil actions" and that *fines* are imposed and collected in "criminal actions," also that in the case of penalties there are no "proceeds" until there is a suit and a recovery. Certainly, and so there are no fines until there is a suit or some judgment of the Court. I think the authors of the Constitution would be loath to con-sider this a serious argument, but rather an effort to reconcile *Sutton v. Phillips* and the present decision.

The Constitution does not attempt to prescribe the ways and

methods nor the agencies for collecting penalties, fines, etc. The Legislature unquestionably regulates the procedure, as in other matters, and may select proper agents; but the net moneys in every instance mentioned in Art. IX, sec. 5, are appropriated to the school fund.

Prior to 1868, the entire subject was under legislative control, but the Constitution of 1868 established a school system and appropriated the fund for its support, and the question now is whether the Legislature can divert a portion of the fund and give it to common informers, municipal corporations or any other; that is, does the Constitution or the Legislature control? "The Constitution is either a superior paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the Legislature shall please to alter it. If the former part of the alternative be true, then a legislative act contrary to the Constitution is no law; if the latter part be true, then written Constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable. * * * If an Act of the Legislature, repugnant to the Constitution, is void, does it, notwithstanding its invalidity, bind the courts and oblige them to give it effect? Or, in other words, though it be no law, does it constitute a rule as operative as if it were a law?" These are the words of MARSHALL, C. J., in *Marbury v. Madison,* 1 Cranch, 69.

It is urged that *Sutton v. Phillips* has been followed in several other cases. That is true, and that only shows a continuous list of errors. Repetition will never correct an error. I know of but one way to correct an error, and that is to cut it up by the roots, especially the tap-root, and let it go. A familiar instance of heroic treatment will be found in *Spruill v. Leary,* 35 N. C. (13 Ired.), 225, 408. There the Court fell into an error, and the Court unanimously at the

first opportunity corrected it, by cutting it out, root and branch. *Myers v. Craig,* 44 N. C. (Busbee Law), 169.

I expressed my views in *Sutton v. Phillips, supra,* p. 511, and nothing but the importance of common schools induces me to write again. The revenues provided in Art. IX, sec. 5, are not inconsiderable, and the withdrawal from that source will reduce the school term, already below the constitutional requirement. I think every blow at common school education is a strike at the principle of civilized and *free* government.

DOUGLAS, J., concurring. After careful consideration I am forced to concur in the opinion as well as the judgment of the Court. If the argument in this case in any way interfered with the school fund as set apart by the Constitution, I could not give it my assent; but such does not seem to me to be its effect either in letter or in spirit. I fully concur in the view that the "clear proceeds of all penalties" belong to the school fund, because the Constitution says so; but the words "clear proceeds" must have some meaning. The Constitution might have said *all* penalties, but this it does not say, and apparently does not mean to say. The proceeds of a debt do not mean the debt itself, but only what is received from the debt. The clear proceeds are only the amount coming into the hands of the creditor after the payment of expenses incurred in the collection of the debt. Therefore that section of the Constitution can refer only to such penalties or parts thereof as come to the State. This was expressly decided by a unanimous Court as far back as *Katzenstein v. Railroad,* 84 N. C., 688, and the principle thus established has since been uniformly followed. It has recently been discussed and reaffirmed, with full citation of authority, in *Carter v. Railroad,* decided at this term.

Where the State alone can sue for the penalty, it is entitled

to all the penalty, provided it does sue; but it gets nothing if it does not sue. I see no reason why the school fund should not become entitled to the penalty given to a common informer if the suit therefor is first brought in the name of the State or of some officer for the benefit of the school fund. That such suits are rarely if ever brought (and I can not now recall a single instance), tends to show that giving penalties to the informer does not subtract a dollar from the school, but simply gives to some one, usually in fact the injured party, the right to a penalty which the State itself would never exact. The imposition of a penalty presumes its collection, and, as its primary object is the enforcement of a public duty, it is proper that it should be collected. If the proper officers of the State can not or will not collect it for their lawful fees, it is proper that the Legislature in its wisdom should allow such part, or all, as may be necessary to secure its collection. If the State itself will not collect it, why should not the right be given to the injured public to collect it, and thus compel the performance of a public duty which it was intended to enforce?

Under all the circumstances, I can not but feel that the public school is merely a sentimental factor in such a discussion, and that the actual effect of a different construction of the Constitution would be to give practical immunity to the wrongdoer without any corresponding benefit to the school.